# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
**Tallahassee Division**

-----------------------------------------------------x
:

REVEREND BRYAN G. FULWIDER,
WOMEN'S EMERGENCY
NETWORK, INC., EMERGENCY          :
MEDICAL ASSISTANCE, INC., PALM    :
BEACH COUNTY CHAPTER OF THE
NATIONAL ORGANIZATION FOR         :
WOMEN, INC., MIAMI WORKERS
CENTER, INC., RABBI ALAN E.       :
LITWAK, RABBI GARY
GLICKSTEIN, RABBI DAVID SPEY,     :
REVEREND HARRIS RIORDAN, and
REVEREND KATHY SCHMITZ,           :

        No. 4:16-cv-[    ]-[     ]

    Plaintiffs,                 :

    v.                          :

JUSTIN SENIOR, in his official capacity    :
as Interim Secretary, Florida Agency for
Health Care Administration, and            :
PAMELA BONDI, in her official
capacity as Attorney General of the State  :
of Florida,
                        :

    Defendants.
-----------------------------------------------------x


## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs, by and through their attorneys, bring this Complaint against the above-named Defendants, their employees, agents, delegates, and successors in office, and in support thereof state the following:

## INTRODUCTORY STATEMENT

1.  This action is brought pursuant to 42 U.S.C. § 1983 to vindicate rights secured by the First Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution.

2.  Plaintiffs challenge a Florida law that compels private noncommercial content- and viewpoint-based speech by mandating that friends, neighbors, family members, clergy, charitable groups, and others who counsel, or whose advice is sought by, a woman considering an abortion, make a "full and detailed explanation of abortion, including the effects of and alternatives to abortion" and, "[i]f the person advised is a minor, [make] a good faith effort … to furnish such information to the parents or guardian of the minor." (collectively, the "Compelled Speech Provision"). Fla. Stat. § 390.025(2).

3.  Pursuant to HB 1411, which was enacted on March 25, 2016, and parts of which become effective January 1, 2017 (the "Act"),[1] the law will also require that such friends, neighbors, family members, clergy, and charitable groups

_____

[1]  A copy of the Act, Ch. 2016-150, 2016 Fla. Laws, is annexed hereto as Exhibit A.

be licensed and pay a fee before they help or advise a person about obtaining an abortion. (the "License/Fee Requirement"). *Id.* Violations of these provisions are punished criminally by up to one year of incarceration. Fla. Stat. § 390.025(6).

4.      The Compelled Speech Provision – including the parental notification requirement in respect of minors (the "Parental Notification Requirement") – and the License/Fee Requirement violate the United States Constitution in multiple respects.

5.      *First*, the challenged statutory provisions violate the First Amendment to the U.S. Constitution by imposing content-based and viewpoint-based pre-conditions (the License/Fee Requirement) on the ability of those subject to the law to speak with women seeking their counsel and by compelling them to engage in prescribed speech (the Compelled Speech Provision). Specifically:

6.      The License/Fee Requirement constitutes an unprecedented content- and viewpoint-based prior restraint on nonprofessional speech because the speaker must register with, and pay a fee to, the Agency for Health Care Administration (the "AHCA") before the speaker can speak about specified content (abortion) from a specified viewpoint (speech designed to aid abortion access). That alone renders it facially unconstitutional. In addition, the License/Fee Requirement unconstitutionally interferes with the speaker's interest in speaking with anonymity, by compelling the speaker to disclose his or her name during

registration.  The License/Fee Requirement also effectively bans a significant

amount of spontaneous speech since, for instance, a person who has not previously

registered may be asked for counselling or a referral on a holiday or weekend,

when registration is not available.

7.      The Compelled Speech Provision is an equally unprecedented

interference with private noncommercial speech.  It compels private,

noncommercial speakers without medical expertise to deliver a state-mandated

speech before aiding a woman seeking an abortion in violation of the speaker's First

Amendment right to decide for him- or herself what not to say.  The Compelled

Speech Provision's requirement that the same speech be given to the parents of

minors (the Parental Notification Requirement) offends the rights of freedom of

speech guaranteed by the First Amendment to the U.S. Constitution.

8.      *Second,* the Parental Notification Requirement violates the right of

privacy guaranteed by the Fourteenth Amendment to the U.S. Constitution in that

it forces members of the clergy, and others with whom a minor may consult about

her reproductive choices, to provide the same explanation of abortion to her

parents, thereby betraying the confidentiality of the most personal and intimate of

discussions.  This forced disclosure of personal information contravenes the

Constitutional right of privacy to protect against forced disclosure of minors'

information regarding personal sexual matters and violates the right to abortion by

mandating parental notification by parties other than the abortion provider, and without even the judicial bypass that is constitutionally required for notification mandates that apply to abortion providers.

9.      *Third*, the License/Fee Requirement violates the right to freedom of association guaranteed by the U.S. Constitution by subjecting Plaintiffs and other Covered Persons to harassment and retaliation, without any compelling governmental interest to justify those consequences.

10.      *Fourth*, the License/Fee Requirement violates the Equal Protection Clause of the U.S. Constitution because it imposes a discriminatory licensure and fee requirement that targets those who provide advice or help to women in obtaining abortions, while not imposing a similar licensure and fee requirement on individuals and organizations that provide counselling on other medical and personal issues and/or seek to dissuade women from obtaining abortion.  This amounts to improper state interference with the exercise of a constitutionally-protected right.

11.      Without relief from this Court, the License/Fee Requirement, the Compelled Speech Provision, and the Parental Notification Requirement will cause significant and irreparable harm to Plaintiffs and the women they serve.

12.     Before providing advice or assistance to a woman seeking an abortion – a constitutionally-guaranteed right – Plaintiffs will be forced to publicly declare themselves as "abortion referral agencies" and provide state-mandated speech that they would not otherwise provide, are not qualified to offer, and with which they do not agree, or else suffer criminal penalties.  This will compromise their ability to effectively counsel the women they seek to serve.  The women they serve will be forced to forfeit the critical advice and counsel Plaintiffs would otherwise provide or be subjected to a state-sponsored message that their medical doctor is already legally required to deliver.  And young women will suffer the indignity and intrusion of having those in whom they have reposed their trust and confidence be compelled to notify their parents of what they discussed, without even any opportunity to first seek relief from the court.

## JURISDICTION AND VENUE

13.     Subject-matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343.

14.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

15.     Venue in this judicial district is proper under 28 U.S.C. § 1391.

## THE PARTIES

### A.      Plaintiffs

16.      The Reverend Bryan G. Fulwider is President and CEO of Building

US, a religious nonprofit in Orlando, Florida, working to create and strengthen

interfaith and inter-community relations in Central Florida.  He leads a twice-

monthly faith group, and provides one-on-one pastoral care and counselling.  From

time to time women seek his spiritual counselling on unintended pregnancy, and he

has counseled women, including minor women, on termination of

pregnancy.  Given this experience, he believes that he meets the definition of an

"abortion referral or counselling agency" under the challenged law and therefore is

subject to the License/Fee Requirement, the Compelled Speech Provision, and the

Parental Notification Requirement.  Taken together, these provisions infringe

Reverend Fulwider's rights of free speech, free exercise of religion, freedom of

association, equal protection, and due process, as well as the privacy and due

process rights of the minors he counsels, by forcing him to register and pay a fee to

counsel women with respect to their reproductive choices; by compelling him to

"provide a full and detailed explanation of abortion" that he is unqualified to

provide and that his parishioners do not seek from him; and by forcing him to

betray the confidence of his minor women parishioners by delivering the

Compelled Speech to their parents.  Reverend Fulwider reasonably fears that he

will be prosecuted for non-compliance with these legal requirements.  For these

reasons, Reverend Fulwider sues on behalf of himself and his minor women

parishioners.

17.     Women's Emergency Network, Inc. ("WEN") is a Florida nonprofit

organization that subsidizes abortion care for South Florida low-income women

and girls who cannot afford a safe legal procedure without financial assistance.

WEN provides funding to a number of clinics, and directs women to those clinics

via its website and pre-recorded telephone helpline.  The clinics then use these

funds to subsidize the cost of abortions when they feel it is appropriate.  This

funding system does not require that WEN have direct contact with the women

whose abortions it subsidizes.  However, five to ten times per week, a woman

reaches WEN on its office line and asks where abortion services are available.  In

these instances, WEN gives them the name and contact information of the clinics

WEN works with.  Given this experience, WEN believes that it meets the

definition of an "abortion referral or counselling agency" under the challenged law

and therefore is subject to the License/Fee Requirement, the Compelled Speech

Provision, and the Parental Notification Requirement.  Taken together, these

provisions interfere with WEN's rights of free speech, association, equal

protection, and due process, and the privacy and due process rights of minor

women to whom WEN may provide referrals, by forcing it to register and pay a fee

to refer women to a clinic; by compelling it to "provide a full and detailed explanation of abortion" that is undefined, that WEN is unqualified to provide, and that women do not seek from WEN; and by forcing WEN to betray the confidence of minor women by delivering the Compelled Speech to their parents, even though WEN does not know the age of the women who phone them.  WEN reasonably fears that it will be prosecuted for non-compliance with these legal requirements.  For these reasons, WEN sues on behalf of itself and its staff and volunteers.

18.     Emergency Medical Assistance, Inc. ("EMA") is a Florida nonprofit corporation that subsidizes abortion care for low-income women and girls in Palm Beach County and surrounding areas who cannot afford a safe legal procedure without financial assistance.  EMA provides funding to certain clinics, which use these funds to subsidize the cost of abortions when they feel it is appropriate.  Hence, women generally learn of EMA's funding assistance from the clinic, without contacting EMA.  Women do sometimes seek information and referral from EMA, and they generally obtain that from EMA's website or phone line recording.  However, extremely occasionally, a woman emails EMA or leaves a message on EMA's phone line, asking where abortion services are available.  In these instances, EMA replies to the woman's email or phone message to give the woman the name and contact information of one of the clinics EMA works

with.  Given this experience, EMA believes that it meets the definition of  an

"abortion referral or counselling agency" under the challenged law and therefore is

subject to the License/Fee Requirement, the Compelled Speech Provision, and the

Parental Notification Requirement.  Taken together, these provisions interfere with

EMA's rights of free speech, association, equal protection, and due process, and

the privacy and due process rights of minor women to whom it may provide

referrals, by forcing it to register and pay a fee to refer women to a clinic; by

compelling it to "provide a full and detailed explanation of abortion" that is

undefined, that EMA is unqualified to provide, and that women do not seek from

EMA; and by forcing EMA to betray the confidence of minor women by delivering

the Compelled Speech to their parents, even though EMA does not know the age of

the women who contact EMA.  EMA reasonably fears that it will be prosecuted for

non-compliance with these legal requirements.  For these reasons, EMA sues on

behalf of itself and its volunteers.

19.    The Palm Beach County Chapter of the National Organization for

Women, Inc. ("NOW PBC") is a Florida nonprofit corporation and grassroots

organization that works to promote feminist ideals, lead societal change, eliminate

discrimination, and achieve and protect the equal rights of all women and

girls.  Women contact NOW PBC seeking advice or help with respect to an

unintended pregnancy, including specifically referrals to an abortion provider, and

NOW PBC refers certain of these women to a local clinic that provides abortion care.  Given this experience, NOW PBC believes that it meets the definition of an "abortion referral or counselling agency" under the challenged law and, therefore, is subject to the License/Fee Requirement, the Compelled Speech Provision, and the Parental Notification Requirement.  Taken together, these provisions interfere with NOW PBC's rights of free speech, association, equal protection, and due process, and the privacy and due process rights of minor women to whom it may provide referrals, by forcing it to register and pay a fee to refer women to a clinic; by compelling it to "provide a full and detailed explanation of abortion" that is undefined, that NOW PBC is unqualified to provide, and that women do not seek from NOW PBC; and by forcing NOW PBC to betray the confidence of minor women by delivering the Compelled Speech to their parents, even though NOW PBC does not necessarily know the age of the women who contact NOW PBC.  NOW PBC reasonably fears that it will be prosecuted for non-compliance with these legal requirements.  For these reasons, NOW PBC sues on behalf of itself and its volunteers.

20.    The Miami Workers Center, Inc. ("MWC") is a Florida nonprofit corporation and social change community-based organization that fights for social, racial, economic, and gender justice in Miami, Florida.  As part of its work, MWC runs a bi-weekly women's circle where women of the community are given a safe

space to discuss issues relevant to their lives, including reproductive health and family issues.  In this context, women have sought advice and help from MWC's Executive Director on unintended pregnancy, and MWC's Executive Director has provided referrals and other support to women who have chosen to have an abortion.   Given this experience, MWC believes that it meets the definition of an "abortion referral or counselling agency" under the challenged law and therefore is subject to the License/Fee Requirement, the Compelled Speech Provision, and the Parental Notification Requirement.  Taken together, these provisions infringe MWC's rights of free speech, freedom of association, equal protection, and due process, and the privacy and due process rights of minor women MWC may counsel, by forcing it to register and pay a fee to counsel women with respect to their reproductive choices; by compelling it to "provide a full and detailed explanation of abortion" that it is unqualified to provide and that the women it serves do not seek from MWC; and by forcing MWC to betray the confidence of any minor women who may seek MWC's help by delivering the Compelled Speech to their parents.  MWC reasonably fears that it, and/or its staff and volunteers, will be prosecuted for non-compliance with these legal requirements.  For these reasons, MWC sues on behalf of itself and its staff and volunteers.

21.     Rabbi Alan E. Litwak is the Senior Rabbi at Temple Sinai in North Miami Beach, Florida.  As Senior Rabbi, he is responsible for teaching, counselling, and leading worship in his congregation.  In this capacity he has counselled women, including minor women, on termination of pregnancy.  Given this experience, he believes that he meets the definition of an "abortion referral or counselling agency" under the challenged law and therefore is subject to the License/Fee Requirement, the Compelled Speech Provision, and the Parental Notification Requirement.  Taken together, these provisions infringe Rabbi Litwak's rights of free speech, free exercise of religion, freedom of association, equal protection, and due process, as well as the privacy and due process rights of the minors he counsels, by forcing him to register and pay a fee to counsel women with respect to their reproductive choices; by compelling him to "provide a full and detailed explanation of abortion" that he is unqualified to provide and that his congregants do not seek from him; and by forcing him to betray the confidence of his minor women congregants by delivering the Compelled Speech to their parents.  Rabbi Litwak reasonably fears that he will be prosecuted for non-compliance with these legal requirements.  For these reasons, Rabbi Litwak sues on behalf of himself and his minor women congregants.

22.     Rabbi Gary Glickstein is the Rabbi at Temple Beth Sholom in Miami Beach, Florida.  As Rabbi, he is responsible for teaching, counselling, and leading

worship in his congregation.  In this capacity he has counselled women, including minor women, on termination of pregnancy.  Given this experience, he believes that he meets the definition of an "abortion referral or counselling agency" under the challenged law and therefore is subject to the License/Fee Requirement, the Compelled Speech Provision, and the Parental Notification Requirement.  Taken together, these provisions infringe Rabbi Glickstein's rights of free speech, free exercise of religion, freedom of association, equal protection, and due process, as well as the privacy and due process rights of the minors he counsels, by forcing him to register and pay a fee to counsel women with respect to their reproductive choices; by compelling him to "provide a full and detailed explanation of abortion" that he is unqualified to provide and that his congregants do not seek from him; and by forcing him to betray the confidence of his minor women congregants by delivering the Compelled Speech to their parents.  Rabbi Glickstein reasonably fears that he will be prosecuted for non-compliance with these legal requirements. For these reasons, Rabbi Glickstein sues on behalf of himself and his minor women congregants.

23.     Rabbi David Spey is the Rabbi at Temple Bat Yam in East Fort Lauderdale, Florida.   As Rabbi, he is responsible for teaching, counselling, and leading worship in his congregation.   In this capacity he has counselled women on termination of pregnancy.  Given this experience, he believes that he meets the

definition of an "abortion referral or counselling agency" under the challenged law and therefore is subject to the License/Fee Requirement, the Compelled Speech Provision, and the Parental Notification Requirement. Taken together, these provisions infringe Rabbi Spey's rights of free speech, free exercise of religion, freedom of association, equal protection, and due process, as well as the privacy and due process rights of the minors he may counsel, by forcing him to register and pay a fee to counsel women with respect to their reproductive choices; by compelling him to "provide a full and detailed explanation of abortion" that he is unqualified to provide and that his congregants do not seek from him; and by forcing him to betray the confidence of his minor women congregants by delivering the Compelled Speech to their parents. Rabbi Spey reasonably fears that he will be prosecuted for non-compliance with these legal requirements. For these reasons, Rabbi Spey sues on behalf of himself and his minor women congregants.

24.     Reverend Harris Riordan is the Minister of the Unitarian Universalist Fellowship of Boca Raton, Florida. As Minister, she is responsible for teaching, counselling, and leading worship in her congregation. In this capacity she has counselled women on termination of pregnancy. Given this experience, she believes that she meets the definition of an "abortion referral or counselling agency" under the challenged law and therefore is subject to the License/Fee

Requirement, the Compelled Speech Provision, and the Parental Notification Requirement.  Taken together, these provisions infringe Reverend Riordan's rights of free speech, free exercise of religion, freedom of association, equal protection, and due process, as well as the privacy and due process rights of the minors she counsels, by forcing her to register and pay a fee to counsel women with respect to their reproductive choices; by compelling her to "provide a full and detailed explanation of abortion" that she is unqualified to provide and that her congregants do not seek from her; and by forcing her to betray the confidence of her minor women congregants by delivering the Compelled Speech to their parents. Reverend Riordan reasonably fears that she will be prosecuted for non-compliance with these legal requirements.  For these reasons, Reverend Riordan sues on behalf of herself and her minor women congregants.

25.     Reverend Kathy Schmitz is the Minister of the First Unitarian Church of Orlando, Florida.  As Minister, she is responsible for teaching, counselling, and leading worship in her congregation.  In this capacity she has counselled women on termination of pregnancy.  Given this experience, she believes that she meets the definition of  an "abortion referral or counselling agency" under the challenged law and therefore is subject to the License/Fee Requirement, the Compelled Speech Provision, and the Parental Notification Requirement.  Taken together, these provisions infringe Reverend Schmitz's rights of free speech, free exercise of

religion, freedom of association, equal protection, and due process, by forcing her to register and pay a fee to counsel women with respect to their reproductive choices; by compelling her to "provide a full and detailed explanation of abortion" that she is unqualified to provide and that her congregants do not seek from her; and by forcing her to betray the confidence of her minor women congregants by delivering the Compelled Speech to their parents.  Reverend Schmitz reasonably fears that she will be prosecuted for non-compliance with these legal requirements.  For these reasons, Reverend Schmitz sues on behalf of herself and her minor women congregants.

### B.    Defendants

26.    Defendant Justin M. Senior is the Interim Secretary of the AHCA, which is the agency responsible for promulgation of regulations pursuant to, and for enforcing, the Florida statutory provisions challenged here.  Defendant Senior is sued in his official capacity, as are his successors.

27.    Defendant Pamela Bondi is the Attorney General of the State of Florida.  In that capacity, she is ultimately responsible for enforcement of Florida criminal law, and any violation of the challenged statutory provisions is subject to prosecution under Florida criminal law.  Defendant Bondi is sued in her official capacity, as are her successors.

28.     At all times hereto, Defendants were acting under color of state law.

## THE CHALLENGED STATUTORY PROVISIONS

29.     The challenged statutory provisions are codified in Florida Statutes

§ 390.025, which currently provides:

> (1)     As used in this section, an "abortion referral or counseling agency" is any person, group, or organization, whether funded publicly or privately, that provides advice or help to persons in obtaining abortions.

> (2)     An abortion referral or counseling agency, before making a referral or aiding a person in obtaining an abortion, shall furnish such person with a full and detailed explanation of abortion, including the effects of and alternatives to abortion. If the person advised is a minor, a good faith effort shall be made by the referral or counseling agency to furnish such information to the parents or guardian of the minor. No abortion referral or counseling agency shall charge or accept any fee, kickback, or compensation of any nature from a physician, hospital, clinic, or other medical facility for referring a person thereto for an abortion.

> (3)     Any person who violates the provisions of this section is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

30.     Effective January 1, 2017, the Act amends Section 390.025 so as to

leave intact subsections (1) and (2), strike subsection (3), and add the following

additional provisions:

> (3)     An abortion referral or counseling agency, as defined in subsection (1), shall register with the Agency for Health Care Administration. To register or renew a registration an applicant must pay an initial or renewal registration fee established by rule, which must not exceed the costs incurred by the agency in

administering this section. Registrants must include in any advertising materials the registration number issued by the agency and must renew their registration biennially.

(4)     The following are exempt from the requirement to register pursuant to subsection (3):

    (a)     Facilities licensed pursuant to this chapter, chapter 395, chapter 400, or chapter 408;

    (b)     Facilities that are exempt from licensure as a clinic under s. 400.9905(4) and that refer five or fewer patients for abortions per month; and

    (c)     Health care practitioners, as defined in s. 456.001, who, in the course of their practice outside of a facility licensed pursuant to this chapter, chapter 395, chapter 400, or chapter 408, refer five or fewer patients for abortions each month.

(5)     The agency shall adopt rules to administer this section and part II of chapter 408.

(6)     Any person who violates the provisions of subsection (2) commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.  In addition to any other penalties imposed pursuant to this chapter, the Agency for Health Care Administration may assess costs related to an investigation of violations of this section which results in a successful prosecution. Such costs may not include attorney fees.

31.     The Act was passed by the Florida Legislature as part of omnibus abortion legislation which was designed to "get Florida out of the abortion business."  *See* Florida Legislative Approves Controversial Abortion Restrictions, Reuters.com, March 9, 2016, available at http://www.reuters.com/article/us-florida-abortion-idUSKCN0WB2QM.

32.    Two of its various provisions were declared unconstitutional by this

Court in *Planned Parenthood of Southwest and Central Florida v. Philip*, No.

4:16CV321–RH/CAS, 2016 WL 3556568, at *5 (N.D. Fla. June 30, 2016), and a

third was narrowed and clarified by the AHCA to avoid constitutional infirmity.

*Id.*, at *8.  This case challenges a fourth provision — the License/Fee Requirement

— as well as related components of a law enacted earlier but still in effect — the

Compelled Speech Provision and the Parental Notification Requirement.

## "COVERED PERSONS"

33.    The range of persons to whom the challenged provisions apply is

exceptionally broad: "any person, group, or organization…that provides advice or

help to persons in obtaining abortions."  (the "Covered Persons").  Fla. Stat. §

390.025(1).  These Covered Persons would include doctors, medical offices,

clinics, hospitals, or other facilities that may provide, or refer women elsewhere

for, abortion services.  But Covered Persons would also include a wide range of

individuals and organizations that provide no professional services but that simply

provide referrals or give advice or other assistance to a woman considering an

abortion, including friends, neighbors, family members, co-workers, charitable

organizations, attorneys, clergy, women's advocacy organizations, domestic

violence shelters, and sexual assault survivor centers, among innumerable others.

## THE COMPELLED SPEECH PROVISION

34.     The Compelled Speech Provision requires any Covered Person, before "making a referral or aiding a person in obtaining an abortion," to furnish a "full and detailed explanation of abortion, including the effects of and alternatives to abortion." All Covered Persons are bound by the Compelled Speech Provision to deliver this state-mandated speech regardless of how many or how few women they may assist or refer for abortion care.

35.     The breadth of the conduct that triggers this obligation  – "making a referral or aiding a person in obtaining an abortion" – extends the Compelled Speech Provision to all manner of assistance a woman may receive in considering an abortion, including making an express referral to an abortion provider, suggesting a local reproductive rights organization for a referral, offering tips on how to conduct a Google search for abortion providers, volunteering to drive a woman to an abortion clinic, or assisting a low-income woman in paying for the care she seeks.

36.     The Compelled Speech Provision gives Covered Persons no guidance as to what the mandated "explanation of abortion" must contain, other than that it must be "full and detailed" and cover the "effects" of and "alternatives" to abortion. To the extent such an explanation requires a review of the medical details of an abortion, the Compelled Speech Provision imposes this obligation on many individuals and organizations that lack the medical training to comply.

37.     Plaintiffs would not engage in such speech in the absence of the Compelled Speech Provision.

38.     The Compelled Speech Provision requires Covered Persons to deliver a "full and detailed" speech about abortion, notwithstanding that many will not have the background necessary to do so.  Indeed, Plaintiffs, who are ministers, rabbis, and volunteers in community centers, are trained in neither medicine generally nor abortion procedures specifically.  As a result, Plaintiffs lack the information and expertise necessary to provide a full and detailed explanation of abortion, its effects, and its alternatives.

39.     Moreover, women generally do not seek Plaintiffs' counsel on the medical details of abortion and its alternatives.  Rather, Plaintiffs are consulted on the personal, moral, religious, and economic implications of various reproductive health choices.  Responding to a woman's request for such non-medical advice by providing an unsolicited explanation of abortion would impair Plaintiffs' relationship with the women they serve and burden the message they wish to communicate to these women.

40.     The Compelled Speech Provision is redundant and unnecessary in any event.  Under Florida law, before a woman is able to have an abortion, her doctor is *already* required to provide her with the very information the challenged law would require Plaintiffs to provide.

41.    Specifically, pursuant to Fla. Stat. § 390.0111(3), no termination of pregnancy may be performed or induced "except with the voluntary and informed written consent of the pregnant woman or, in the case of a mental incompetent, the voluntary and informed written consent of her court-appointed guardian." Accordingly, prior to conducting an abortion, a doctor must inform a woman of "[t]he nature and risks of undergoing or not undergoing the proposed procedure that a reasonable patient would consider material to making a knowing and willful decision of whether to terminate a pregnancy." Fla. Stat. § 390.0111(a)(1)(a); *see also id.* § 390.0111(a)(1)(c) (doctor must inform the woman of "[t]he medical risks to the woman and fetus of carrying the pregnancy to term"). A doctor must further provide the woman with state-produced printed materials that include "[a] description of the fetus, including a description of the various stages of development . . . [a] list of entities that offer alternatives to terminating the pregnancy . . . [and] [d]etailed information on the availability of medical assistance benefits for prenatal care, childbirth, and neonatal care." Fla. Stat. § 390.0111(a)(2). Moreover, under Florida law, prior to providing abortion services to a minor woman, a medical provider must provide notice to the minor's parent, subject to the minor's ability to seek a judicial order obviating the notice requirement. Fla. Stat. § 390.01114.

## THE LICENSE/FEE REQUIREMENT

42.     The License/Fee Requirement mandates that a Covered Person

register with AHCA and pay a fee in order to be able to provide advice or help to a

person in obtaining an abortion.

43.     Pursuant to Rule 59A-9.035, Florida Administrative Code ("Abortion

Referral or Counselling Agency Registration"), the Registration Fee will be $200,

which must be paid upon initial registration and renewal every two years.  That

same provision requires Covered Persons to post their current Abortion Referral or

Counseling Agency "registration . . .  in a conspicuous place within the premises

where it can be viewed by patients."  *Id.* 59A-9.035(4).  This is so despite the fact

that the women counseled are not limited to "patients," and there is no requirement

that the women meet with the Covered Persons in any "premises."

44.     The License/Fee Requirement exempts from coverage certain licensed

healthcare facilities like abortion clinics, hospitals, and ambulatory care centers,

Fla. Stat. § 390.025(4)(a), and exempts a wider range of other health facilities and

medical providers that make five or less referrals per month, Fla.

Stat. § 390.025(4)(b)-(c).   Thus, non-medical Covered Persons with no role

whatsoever in the provision of abortion services must comply with the Registration

and Fee Requirement no matter how infrequently they advise or help a woman in

obtaining an abortion.

45.     The License/Fee Requirement is a content-based speech restriction, because Plaintiffs and other Covered Persons are free to advise (*i.e.*, speak to) clients and congregants about any subject at all without registering and paying a fee.  They can advise a pregnant woman about prenatal care and refer to her a physician to provide her such care.  They can also advise a pregnant woman about placing a child for adoption and refer her to an agency that can assist her in doing so.  But in order to advise that same woman about abortion care and/or offer to refer her to a physician to provide such care—that is, the moment the content of their speech is abortion—Plaintiffs are forced to register and pay the state a fee.

46.     The License/Fee Requirement is also a viewpoint-based speech restriction.  It is not just speech to pregnant women on the subject of abortion that triggers the challenged provisions' burdens, but speech that aids rather than dissuades that the law singles out for regulation.  If, rather than "aiding" a woman seeking an abortion, Plaintiffs were to discourage a woman from obtaining an abortion (and refer her instead to an antiabortion crisis pregnancy center), they could do so without being forced to register or pay a fine.

47.     The act of registering as an Abortion Referral or Counselling Agency is not without consequence.  Abortion providers, individuals seeking abortion, and abortion clinic staff have long been the target of anti-abortion activists' harassment, threats, and intimidation.  Registration thus exposes Plaintiffs and the

women they serve to the risk of similar retaliatory action from anti-abortion activists.

## THE PARENTAL NOTIFICATION REQUIREMENT

48.    All Covered Persons are further subject to the Parental Notification Provision, which requires a Covered Person who makes a referral or otherwise offers assistance to a minor who is seeking an abortion to make a "good faith effort… to furnish" the information required by the Compelled Speech Provision "to the parents or guardians of the minor."  Fla. Stat. § 390.025(2).

49.    The Parental Notification Requirement purports to govern the highly personal and private communications between a woman considering an abortion and trusted counsellors she may consult for advice in making that decision.  By requiring a Covered Person to provide the parents or guardian of a minor with information regarding an abortion, the Parental Notification Requirement necessarily requires that the Covered Person inform the minor's parents or guardian that she has sought consultation regarding access to an abortion.  This requirement applies regardless of whether the minor is a victim of abuse; whether the minor ultimately decides to remain pregnant; and whether the minor later – perhaps the day after seeking advice or a referral from the Covered Person – finds out that she is not in fact pregnant.

50.     The Act does not contain a judicial bypass option, which – if it were permissible to mandate parental notification for a minor seeking advice, rather than only for a minor actually getting an abortion – would allow a minor to seek waiver of the Parental Notification Requirement.

51.     As noted above, Florida law already requires parental notification by the abortion provider before a minor can obtain an abortion, but provides a judicial bypass alternative to that requirement.  The Parental Notification Requirement imposes an additional requirement of parental notification for a minor who has sought aid or advice concerning abortion, but without any judicial bypass alternative.

52.      Plaintiffs and the women they serve have no adequate remedy at law for the constitutional deprivations caused by the Compelled Speech Provision, the License/Fee Requirement, and the Parental Notification Requirement.

## **COMBINED IMPACT ON CLERGY**

53.     The challenged provisions burden, restrict, and interfere with the spiritual, privileged communications between a member of the clergy and the person seeking his or her spiritual guidance.  The Compelled Speech Provision mandates that clergy impart certain information they would not otherwise impart, and – unless they do so – prohibits them from providing guidance and assistance that they are called by their faith to provide.  The License/Fee Requirement

requires clergy to register and pay a fee before they may provide spiritual counseling. The Parental Notification Requirement compels them to breach the confidentiality of their spiritual and religious communications with individual parishioners or congregants in violation of their faith and their sincerely held religious beliefs.

## CLAIMS FOR RELIEF

### COUNT I
**(Compelled Speech Provision – Freedom of Speech – U.S. Constitution)**

54.     Plaintiffs hereby incorporate Paragraphs 1 through 53 as though fully set forth herein.

55.     The Compelled Speech Provision violates rights guaranteed to Plaintiffs under the First Amendment to the U.S. Constitution because it compels Plaintiffs to convey a state-mandated message regarding abortion which, but for the Compelled Speech Provision, Plaintiffs would not otherwise provide and subjects them to criminal penalties if they do not comply.

### COUNT II
**(Compelled Speech Provision – Vagueness – U.S. Constitution)**

56.     Plaintiffs hereby incorporate Paragraphs 1 through 53 as though fully set forth herein.

57.     The Compelled Speech Provision violates rights guaranteed to

Plaintiffs under the Due Process Clause of the Fourteenth Amendment to the U.S.

Constitution because it fails to give adequate notice as to what speech may be

criminalized and encourages arbitrary and discriminatory enforcement.

## COUNT III
**(License/Fee Requirement – Freedom of Speech – U.S. Constitution)**

58.     Plaintiffs hereby incorporate Paragraphs 1 through 53 as though fully

set forth herein.

59.     The License/Fee Requirement violates rights guaranteed to Plaintiffs

under the First Amendment of the U.S. Constitution because it (a) imposes a prior

restraint on Plaintiffs, who are neither learned professionals nor commercial

speakers, by requiring them to register with AHCA before they can speak; (b)

imposes a content- and viewpoint-based burden on speech; (c) interferes with

Plaintiffs' interest in speaking with anonymity by requiring disclosure of their

name during registration; and (d) bans a significant amount of spontaneous speech.

## COUNT IV
**(License/Fee Requirement – Freedom of Association – U.S. Constitution)**

60.     Plaintiffs hereby incorporate Paragraphs 1 through 53 as though fully

set forth herein.

61.    The License/Fee Requirement violates rights guaranteed to Plaintiffs under the First Amendment to the U.S. Constitution because, by requiring Plaintiffs to publicly register as an "abortion referral or counselling agency," it subjects Plaintiffs to potential harassment and retaliation, thus violating Plaintiffs' right to freedom of association.

## COUNT V
### (License/Fee Requirement – Equal Protection – U.S. Constitution)

62.    Plaintiffs hereby incorporate Paragraphs 1 through 53 as though fully set forth herein.

63.    The License/Fee Requirement violates rights guaranteed to Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution because it treats them differently than other persons who counsel women on their options regarding pregnancy, including persons who advise women against obtaining abortions.  The License/Fee Requirement thus amounts to a discriminatory tax that violates the rights of women and their service providers.

## COUNT VI
### (Parental Notification Provision – Right to Informational Privacy – U.S. Constitution)

64.    Plaintiffs hereby incorporate Paragraphs 1 through 53 as though fully set forth herein.

65.     The Parental Notification Provision violates rights guaranteed to minor persons to whom Plaintiffs provide advice or help in obtaining abortions under the Fourteenth Amendment to the U.S. Constitution because it requires Plaintiffs to furnish information to such minor's parents, thereby disclosing the fact of the minor's pregnancy and consideration of abortion, and thus violating the right to privacy.

## COUNT VII

**(Parental Notification Provision – Right to Privacy – U.S. Constitution)**

66.     Plaintiffs hereby incorporate Paragraphs 1 through 53 as though fully set forth herein.

67.     The Parental Notification Provision violates rights guaranteed to minor persons to whom Plaintiffs provide advice or help in obtaining abortions under the Fourteenth Amendment to the U.S. Constitution because it imposes a requirement of parental notification without providing a judicial bypass alternative.

## COUNT VIII

**(Compelled Speech, License/Fee, and Parental Notification Provisions – Free Exercise of Religion – U.S. Constitution)**

68.     Plaintiffs hereby incorporate Paragraphs 1 through 53 as though fully set forth herein.

69.     The Compelled Speech, License/Fee, and Parental Notifications Provisions violate rights guaranteed to Plaintiff clergy members from whom adult and minor parishioners or congregants seek spiritual advice or help in obtaining abortions under the free exercise clause of the First Amendment to the U.S. Constitution because they burden, restrict, and interfere with that spiritual and privileged communication, and require clergy members to breach the confidentiality of communications with minor parishioners or congregants, all in violation of their professional obligations as faith leaders, and subjects them to criminal penalties if they do not comply.

## RELIEF REQUESTED

**WHEREFORE, Plaintiffs request that this Court:**

    **A.**    Issue a declaratory judgment that Fla. Stat. § 390.025 is unconstitutional under the United States Constitution.

    **B.**    Issue preliminary and permanent injunctive relief, without bond, enjoining the enforcement, operation, and execution of Fla. Stat. § 390.025.

    **C.**    Grant Plaintiffs' attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

    **D.**    Grant such further relief as this Court deems just and proper.

Dated: December 12, 2016

Respectfully submitted,

s/ James K. Green, Esq.
Florida Bar No: 229466
JAMES K. GREEN, P.A.
Suite 1650, Esperanté
222 Lakeview Ave.
West Palm Beach, Florida 33401
(561) 659-2029 (telephone)
(561) 655-1357 (facsimile)
jameskgreen@bellsouth.net
(Trial Counsel, and Cooperating Attorney for
the American Civil Liberties Union Foundation
of Florida, Inc.)

Nancy Abudu, Esq.
Florida Bar No: 111881
Legal Director
American Civil Liberties Union
Foundation of Florida, Inc.
4500 Biscayne Blvd, Suite 340
Miami, Florida 33137
Tel: (786) 363-2700

Susan Talcott Camp (*pro hac vice* forthcoming)
Andrew Beck (*pro hac vice* forthcoming)
American Civil Liberties Union
125 Broad Street
New York, New York 10004
Tel: (212) 284-7000
tcamp@aclu.org
abeck@aclu.org

Mary Eaton (*pro hac vice* forthcoming)
Wesley R. Powell (*pro hac vice* forthcoming)
Andrew Hanrahan (*pro hac vice* forthcoming)

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
meaton@willkie.com
wpowell@willkie.com
ahanrahan@willkie.com

*Counsel for Plaintiffs*

## **CERTIFICATION AND CLOSING**

Under Federal Rule of Civil Procedure 11, by signing below I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: December 12, 2016

s/ James K. Green, Esq.
Florida Bar No: 229466
JAMES K. GREEN, P.A.
Suite 1650, Esperanté
222 Lakeview Ave.
West Palm Beach, Florida 33401
(561) 659-2029 (telephone)
(561) 655-1357 (facsimile)
jameskgreen@bellsouth.net
(Trial Counsel, and Cooperating Attorney
for the American Civil Liberties Union
Foundation of Florida, Inc.)

*Attorney for Plaintiffs*