# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION


REVEREND BRYAN G.
FULWIDER et al.,

      Plaintiffs,

v.                         CASE NO.  4:16cv765-RH/CAS

JUSTIN SENIOR etc. et al.,

      Defendants.

_____/


## PRELIMINARY INJUNCTION


      This case presents a challenge to a state law that (1) imposes a content- and viewpoint-based requirement to register and pay a fee to engage in speech protected by the First Amendment and (2) makes it a crime *not* to simultaneously engage in compelled speech that the law describes so vaguely that even the state's Attorney General does not know what is required. This order grants a preliminary injunction barring enforcement of these provisions.

# I. The Challenged Provisions

In 2016 the Florida Legislature amended a statute that has been on the books since 1979. The statute, Florida Statutes § 390.025, applies to "any person, group, or organization, whether funded publicly or privately, that provides advice or help to persons in obtaining abortions." *Id*. § 390.025(1). The statute refers to any such person, group, or organization as an "abortion referral or counseling agency."

The statute includes three challenged provisions.

First, the registration-and-fee provision requires a referral or counseling agency to register with the Florida Agency for Health Care Administration and to pay a registration fee, now set at $200. *Id*. § 390.025(3); Fla. Admin. Code r. 59A-9.035. A registrant must renew the registration, and pay the same fee again, every two years. Licensed hospitals, doctors, and some other facilities and medical professionals are exempt from these requirements. Fla. Stat. § 390.025(4).

Second, the compelled-speech provision requires a referral or counseling agency, "before making a referral or aiding a person in obtaining an abortion," to "furnish such person with a full and detailed explanation of abortion, including the effects of and alternatives to abortion." *Id*. § 390.025(2). Failure to do this is a crime punishable by up to a year in jail. *Id*. §§ 390.025(6); 775.082(4)(a).

Third, the parental-notification provision requires a referral or counseling agency, before making a referral or aiding a minor in obtaining an abortion, to make a "good faith effort" to furnish the minor's "parents or guardian" a "full and detailed explanation of abortion, including the effects of and alternatives to abortion." *Id*. § 390.025(2). Violation is again a crime punishable by up to a year in jail. *Id.* §§ 390.025(6); 775.082(4)(a).

## II. The Plaintiffs

The plaintiffs are six individuals and four not-for-profit corporations. The individuals are all ministers or rabbis. The evidence includes undisputed declarations from three of the individuals—a minister and two rabbis—and from officials of three of the corporations.

The declarant minister and rabbis provide religious counseling that sometimes includes a discussion of religious beliefs about abortion and sometimes includes referral to an organization with greater information about abortion, including organizations that provide abortions. The minister and rabbis do not provide abortions, do not have medical training, and are incapable of providing a full and detailed explanation of abortion procedures or medical effects. They each receive a salary funded from private sources, including congregant donations.

The not-for-profit corporations also do not provide abortions, are not staffed with individuals with medical training, and are probably incapable of providing a full and detailed explanation of abortion procedures or medical effects.

The plaintiff Miami Workers Center is a not-for-profit corporation that receives funding from private sources. The Center advocates social change and seeks to provide assistance on a wide range of subjects for low-income, minority men and women. The subjects include housing, immigration rights, labor issues, and protection from domestic violence and sexual abuse. The Center runs a biweekly "women's circle" attended by women of all ages that addresses a wide range of subjects. Abortion is sometimes discussed. Separately, women sometimes seek the Center's advice about unintended pregnancies. A Center employee sometimes refers a woman who has chosen to abort to an abortion provider, sometimes makes an appointment for the woman, and sometimes attends the appointment with the woman. Some of the Center's clients need assistance with this and other tasks because they do not speak English or otherwise lack skills that are useful in navigating healthcare, governmental, and other systems.

The plaintiff Palm Beach Chapter of the National Organization for Women is a not-for-profit corporation that opposes discrimination against women. The Chapter is funded through $35 annual dues paid by more than 500 members and

through charitable contributions received primarily through an annual fundraiser. The Chapter presents programs in the community on various issues, interviews political candidates, and lobbies legislators. Because of the Chapter's reputation as an advocate for women, it sometimes receives telephone calls or emails asking for advice or help with an unintended pregnancy or for a referral to an abortion clinic. The Chapter responds to a request for a referral to an abortion clinic by providing a referral.

The plaintiff Women's Emergency Network is a not-for-profit corporation that obtains its funding through charitable contributions. The Network in turn provides financial assistance to clinics that provide abortions to low-income women. The Center has a website and helpline through which it provides contact information for the subsidized clinics. The Center often does not know—and has no reliable way to learn—the age of a woman to whom the Center provides a referral.

### III.  Procedural Background

The plaintiffs filed this action under 42 U.S.C. § 1983 challenging as unconstitutional the registration-and-fee provision, the compelled-speech provision, and the parental-notification provision. The plaintiffs seek declaratory and injunctive relief. They have named as defendants, in their official capacities,

the Secretary of the Florida Agency for Health Care Administration ("AHCA") and the Florida Attorney General.

The plaintiffs have moved for a preliminary injunction. The motion has been fully briefed and orally argued. The parties have agreed that the motion should be resolved on the existing record, without an evidentiary hearing.

The defendants have asserted that the motion should be denied on three grounds. First, the defendants assert the action is barred by the Eleventh Amendment because these defendants have no role in administration or enforcement of the challenged provisions. Second, the defendants assert the plaintiffs lack standing because there is no risk that the challenged provisions will actually be enforced. And third, the defendants assert the plaintiffs have not shown the four prerequisites to a preliminary injunction, including likelihood of success on the merits.

## IV. Prerequisites to a Preliminary Injunction

As prerequisites to a preliminary injunction, a plaintiff must show a substantial likelihood of success on the merits, that the plaintiff will suffer irreparable injury if the injunction does not issue, that the threatened injury outweighs whatever damage the proposed injunction may cause a defendant, and that the injunction will not be adverse to the public interest. *See, e.g., Charles H.*

*Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

The defendants are of course correct that a preliminary injunction cannot issue if the action is barred by the Eleventh Amendment or the plaintiffs lack standing. This is so regardless of whether these issues are viewed as part of the required showing of substantial likelihood of success on the merits or as separate jurisdictional requirements. As the defendants did in their brief, this order breaks the Eleventh Amendment and standing issues out for separate treatment and then turns to the four-prong preliminary-injunction test.

## V. Eleventh Amendment

The Eleventh Amendment protects a state from a claim in federal court unless the immunity has been waived or validly abrogated by Congress. *See, e.g.*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996). But a claim for prospective relief based on federal law may go forward against a state officer who has a sufficient role in the challenged state action. *See Ex parte Young*, 209 U.S. 123 (1908). The Eleventh Circuit has "interpreted *Ex Parte Young* to permit suits against state officers only when those officers are 'responsible for' a challenged action and have 'some connection' to the unconstitutional act at issue." *Women's*

*Emergency Network v. Bush*, 323 F.3d 937, 949–50 (11th Cir. 2003) (quoting

*Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir. 1988)).

### A. The Secretary

The defendant Secretary is the head of ACHA and is responsible for

AHCA's activities. The defendants do not deny this. The defendants assert,

instead, that AHCA has an insufficient role in the administration and enforcement

of § 390.025 to permit an *Ex parte Young* action against the Secretary. That is

wrong.

The statute requires AHCA to "adopt rules to administer" the statute. Fla.

Stat. § 390.025(5). Based on its statutory authority, AHCA adopted a rule

establishing procedures for the required registration and set the required fee. Fla.

Admin. Code r. 59A-9.035. The rule provides that a registration remains in effect

for two years "unless sooner suspended or revoked." *Id*. The agency that would

suspend or revoke a registration is AHCA. Perhaps more importantly, in response

to this litigation, AHCA amended the rule to set out a narrowing construction of

the statute—a construction the defendants assert is controlling. *See* ECF No. 31 at

6; ECF 38 at 24.

AHCA may investigate any alleged violation of any part of the statute and

may assess against an offender the costs that AHCA incurs in an investigation that

leads to a successful prosecution. *See* Fla. Stat. § 390.025(6). According to the defendants, a purpose of the registration requirement—the registration requirement administered by AHCA—is to make available information that may be used to initiate a criminal prosecution. *See* ECF No. 31 at 25 n.4.

In nonetheless asserting that the Secretary cannot be sued under *Ex parte Young*, the defendants emphasize that the Secretary cannot himself initiate a criminal prosecution; only a state attorney can do that. But *Ex parte Young* has never been limited to state officers with prosecutorial authority. Indeed, most *Ex parte Young* actions do not involve criminal statutes at all. To be subject to suit under *Ex parte Young*, a state officer must have a role in administration or enforcement of the challenged state action, but a state officer need not have authority to initiate a prosecution. Hundreds of opinions could be cited that illustrate the point—though typically without discussing a defendant's irrelevant lack of prosecutorial authority. *See, e.g.*, *Grutter v. Bollinger*, 539 U.S. 306 (2003) (adjudicating a constitutional claim against a state official who had no authority to file criminal charges).

In sum, as the head of AHCA, the Secretary is "responsible for" and has "some connection to" the challenged parts of § 390.025. The claims against the

Secretary are proper under *Ex parte Young* and are not barred by the Eleventh
Amendment.

### B. The Attorney General

The issue is closer for the Attorney General. The Attorney General does not
accept registrations under § 390.025 or collect the required fees. The Attorney
General does not have authority to adopt rules administering the statute. The
Attorney General cannot initiate a prosecution under the statute; only a state
attorney can do that. The Attorney General cannot compel a state attorney to
prosecute—or not to prosecute—such a case.

Even so, the Attorney General's role in any § 390.025 prosecution is not
limited to acting as the state's lawyer. The Attorney General prosecutes and
defends appeals in criminal cases, sometimes using her own attorneys and
sometimes through attorneys from a state attorney's office. So the Attorney
General has decision-making authority in any appeal in a § 390.025 prosecution.
And the Attorney General probably also has authority to bring a civil action to
enforce the statute. *See Thompson v. Wainwright*, 714 F.2d 1495, 1500 (11th Cir.
1983) (noting the Florida Attorney General's broad common-law powers and
citing *State ex rel. Davis v. Love.*, 126 So. 374, 376 (Fla. 1934)); *see also Florida
ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 268-70 (5th Cir. 1976) (same).

The Eleventh Circuit has said in dictum that in a case challenging a Florida statute, declaratory relief may properly be granted against the Attorney General, even if the Attorney General has no authority to enforce the statute. *See Doe v. Stincer*, 175 F.3d 879, 887 n.6 (11th Cir. 1999). But dictum is not binding, and the statement in *Stincer* may be overly broad. Moreover, at this stage of the litigation, the plaintiffs seek a preliminary injunction, not preliminary declaratory relief.

Whether the Attorney General is a proper defendant in this case need not be resolved at this time, because either way, the plaintiffs will suffer no irreparable harm if a preliminary injunction issues only against the Secretary and not against the Attorney General.

## VI.  Standing

### A.  The Elements of Standing

A plaintiff may pursue an action in federal court only if the plaintiff has standing. In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), the Supreme Court said the "irreducible constitutional minimum of standing contains three elements." First, the plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*. (internal quotation marks and citations omitted). Second, "there must be a causal connection between the injury

and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id*. (internal quotation marks, ellipses, and brackets omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. (internal quotation marks omitted).

### B. The Plaintiffs' Standing

The plaintiffs for whom the record includes declarations have met these requirements. All have referred individuals to abortion clinics and are likely to do it again; the prospect is not speculative. At least on a literal reading of § 390.025, all of the challenged provisions apply to these plaintiffs and will require the plaintiffs to take prompt action unless enforcement of the statute is enjoined. The plaintiffs will be required to register and pay the attendant fee. When they refer an individual to an abortion clinic, they will be required to engage in compelled speech—to give a full and detailed explanation of abortion, including the effects of and alternatives to abortion, whatever that means—and will be subject to prosecution if they fail to do so. And if they refer a minor to an abortion clinic, they will be required to notify and provide the same information to the minor's parents or guardian.

The requirement to do these things inflicts an injury in fact that is imminent and likely, not speculative. And if, as the plaintiffs assert, the statute is unconstitutional, the plaintiffs' injury can be redressed by an order declaring the statute unconstitutional and enjoining its enforcement. Thus, for example, if an order is entered that prohibits the Secretary from collecting the fee, the plaintiffs will not have to pay the fee. This is a paradigm of redressability.

### C. The Defendants' Assertions

The defendants nonetheless challenge the plaintiffs' standing on three grounds.

### 1. Lack of Enforcement Authority

The defendants say, in effect, that the registration-and-fee requirement, which was adopted by the 2016 Florida Legislature and took effect in 2017, imposes no injury in fact on the plaintiffs because failing to register and pay the fee is not a crime. The defendants seem to suggest the plaintiffs can just ignore the new requirement with impunity. The defendants do not expressly admit the requirement is unconstitutional; they just say the plaintiffs need not comply with it.

It is a remarkable assertion. If not for the obvious constitutional issues, one might expect state officials—especially the Attorney General—to say the law was duly enacted and must be followed. Unless the Legislature knew it was adopting an

unconstitutional provision, the Legislature must have believed it was imposing an actual requirement, not adopting a provision that nobody would follow and that would have no effect. And perhaps most importantly, the plaintiffs—including individuals who are men of the cloth—can hardly be criticized for seeking a judicial remedy rather than simply flouting the law. By directing the plaintiffs to register and pay a fee, the statute imposes an injury in fact.

## 2.   Absence of Enforcement

The defendants note, correctly, that the compelled-speech and parental-notification provisions have been in place since 1979 and that nobody has been prosecuted for violating them. They imply that this history of non-enforcement means that the statute also will not be enforced in the future. But this assertion fails to account for the Legislature's recent amendment, which requires AHCA to create and maintain a public registry of all those who provide advice about abortions.

As the defendants have themselves suggested, *see* ECF No. 31 at 25 n.4, a purpose of the registration requirement may have been to make available information that could be used to initiate a prosecution—thus making the prospect of a prosecution substantially greater now than in the past. It is by no means farfetched to suggest that on an issue this politically charged, in times this

politically charged, someone might complain to a prosecutor, and a prosecutor might file charges, against one who assists individuals in obtaining abortions.

In sum, the absence of prosecutions to date does not deprive the plaintiffs of standing. *See Steffel v. Thompson*, 415 U.S. 452 (1974) ("It is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.")

The cases on which the defendants rely are not to the contrary. In *Poe v. Ullman*, 367 U.S. 497 (1961), the Supreme Court declined to rule on the merits of a challenge to a criminal statute prohibiting the use of contraceptives and the giving of medical advice about their use. The statute had been on the books for more than 80 years and had resulted in only a single prosecution that was dropped more than 60 years before the challenge came to the Supreme Court. In the 4–1–4 decision, the controlling opinion was Justice Brennan's concurrence. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (internal quotation marks omitted). Justice Brennan's concurrence consisted of a single paragraph lamenting the "skimpy record," asserting that the challenged statute was not directed to the

plaintiffs' activities, and concluding that the plaintiffs faced no real threat of prosecution. Unlike here, the state had not recently adopted a new statute designed in part to make information available that could be used to prosecute individuals who violated the older statute. Nor did the challenged statute impose any affirmative duty on the plaintiffs akin to the registration-and-fee and compelled-speech requirements at issue here.

The defendants also cite *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 111 (1983). There the Supreme Court held that a person who had been subjected to a chokehold in the past had no standing to seek injunctive relief against the city's practice of using chokeholds because there was not a "sufficient likelihood that he will again be wronged in a similar way." Here, in contrast, it is not just likely but certain that the plaintiffs will be required to register, pay a fee, and engage in compelled speech, at least if the challenged statute is enforced according to its terms. This is an injury in fact.

### 3. Statutory Revision

The defendants apparently suggest that, in light of the Secretary's interpretation of the statute—in reality, a substantial revision of the statute—the plaintiffs are not subject to the statute at all.

By its terms, the statute applies to (1) any "person, group, or organization," that (2) "provides advice or help to persons in obtaining abortions," (3) regardless of whether the person, group, or organization is "funded publicly or privately." Fla. Stat. § 390.025(1). This order addresses each of these three requirements in turn.

First, in any Florida statute, unless otherwise specifically provided, the word "person" includes "individuals, children, firms, associations, joint adventures, partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations, and all other groups or combinations." Fla. Stat. 1.01(3). So the reference in § 390.025(1) to groups and organizations is apparently superfluous. In any event, for ease of reference, this order uses "person" rather than the longer phrase "person, group, or organization." The plaintiffs come within this term. The defendants do not assert the contrary.

Second, the statute applies to a person who "provides advice or help to persons in obtaining abortions." The plaintiffs provide advice that sometimes helps individuals obtain abortions. The plain language of the statute applies to the plaintiffs.

Third, the statute applies regardless of whether a person—in this context, usually an organization—is "funded publicly or privately." The obvious purpose of this language is to make clear that the statute applies to all providers of abortion

advice, not just to those who are publicly funded. This makes the statute broader than some other efforts to rein in abortion providers. *See, e.g.*, Fla. Stat. § 390.0111(15). The plain language of the statute applies to the plaintiffs, who are privately funded.

The Secretary says, though, that the statute does not mean what it says. In response to this litigation, the Secretary adopted a rule that, if deemed binding, would make two fundamental changes to the statute. *See* Fla. Admin. Code r. 59A-9.035(1). First, the rule would substantially narrow the statute, making it apply not to any person who "provides advice or help" of the specified kind but only to a person who is "*paid for the particular purpose*" of providing such advice or help. *Id*. (emphasis added). Second, the rule would substantially expand the statute, making it apply not just to advice or help "in obtaining abortions," but to advice or help "in obtaining abortions *or in pursuing alternatives to abortion*." Id. (emphasis added).

These efforts to cure the statute's obvious constitutional deficiencies may be commendable, but they do not obviate the plaintiffs' legitimate concerns. The Secretary adopted the rule after oral argument on the motion for a preliminary injunction and can change the rule just as quickly. Indeed, the rule is itself a change from the rule the Secretary adopted prior to the litigation and from the

interpretation the Secretary advocated in his brief and at oral argument, confirming

just how quickly the Secretary can change tack. In any event, the rule departs so

fundamentally from the statutory language that there are good grounds to doubt the

rule's staying power. *See G.B. v. Agency for Persons with Disabilities*, 143. So. 3d

454, 457 (Fla. 1st DCA 2014) ("An agency may not propose or create a rule that

enlarges, modifies, or contravenes the specific provisions of . . . the language of the

enabling statute."). The defendants have not invoked the voluntary-cessation

doctrine or asserted the case is moot. The plaintiffs have standing to challenge a

statute that by its terms so clearly applies to them.

## VII.  Likelihood of Success on the Merits

The first thing a plaintiff must show to obtain a preliminary injunction is

likelihood of success on the merits. The plaintiffs have made the required showing

for all three of the challenged statutory provisions.

### A.  The Registration-and-Fee Provision

Advice of the kind the plaintiffs provide is obviously protected by the First

Amendment. Thus, for example, the plaintiff minister and rabbis provide religious

counseling that sometimes includes a discussion of religious beliefs about abortion

and sometimes includes referral to an organization with greater information about

abortion, including organizations that provide abortions. This is speech about legal

activities. The same is true for the advice provided by the other plaintiffs. The defendants do not assert that the state could prohibit this speech.

The statutory requirement to register and pay a fee as a prerequisite to engaging in lawful speech of this kind is subject to strict scrutiny. This is so because the statute is both content- and viewpoint-based. *See Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015). A minister or other person may give advice or help to persons in obtaining vaccinations or cancer treatment or an infinite variety of other services without registering and paying a fee but must register and pay a fee to give advice or help to persons in obtaining abortions. The registration-and-fee provision is thus entirely content-based, as *Reed* makes clear. *See id.* at 2227 ("Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed."). And the statute—though not the Secretary's revision of it—takes sides on the abortion issue, requiring a person to register and pay a fee when providing advice or help in favor of abortion but not in opposition. This is plainly viewpoint-based. *See Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.").

*Reed* applied strict scrutiny and struck down a city's content-based

restrictions on signs despite the city's proffer of interests the court assumed were

compelling. Here, in contrast, the defendants have not even attempted to suggest a

compelling interest served by the challenged provisions. Indeed, in their briefs they

proffered no legitimate interest at all. At oral argument they suggested interests

that would not survive even intermediate scrutiny: revealing abortion referral

agencies to the public and promoting women's confidence in them. As the

defendants have themselves emphasized, the statute requires only registration, not

standards-based licensure; if this promotes confidence, it does so only a little. And

the state has no legitimate interest, let alone a compelling interest, in requiring

disclosure of private religious speech of this kind. The statute is a naked effort to

impede speech on a disfavored topic promoting a disfavored but legal viewpoint.

The plaintiffs are likely to prevail on the merits of their challenge to the

registration-and-fee provision.

### B.   *The Compelled-Speech and Parental-Notification Provisions*

The compelled-speech provision requires a person who provides advice or

help in obtaining abortions to go further—to also provide "a full and detailed

explanation of abortion, including the effects of and alternatives to abortion." Fla.

Stat. § 390.025(2). The parental-notification provision requires the same disclosure

to a minor's parents or guardian. Failure to comply with these requirements is a crime.

The requirement for "a full and detailed explanation of abortion, including the effects of and alternatives to abortion," is hopelessly vague. Indeed, when asked at oral argument what a plaintiff would have to say to comply with the statute, the defendants had no answer. The response was this: "I don't know specifically what he has to say." ECF No. 38 at 38. When the state's attorney general cannot explain what a criminal statute requires—cannot explain how a person could comply with the statute—the statute is unconstitutionally vague.

The Supreme Court recently explained it this way:

> The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." Our cases establish that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. The prohibition of vagueness in criminal statutes "is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law," and a statute that flouts it "violates the first essential of due process."

*Johnson v. United States*, 135 S. Ct. 2551, 2556-57 (2015) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357–358 (1983) and *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)). "Ordinary people" can hardly be expected to know what a criminal statute requires when the state's attorney general does not know.

The plaintiffs are likely to prevail on the merits of their challenge to the compelled-speech and parental-notification provisions.

## VIII.  Irreparable Injury

The second prerequisite to a preliminary injunction is this: the plaintiffs must show that they will suffer irreparable injury if the injunction does not issue.

The compelled-speech and parental-notification provisions impose on the plaintiffs only two options. First, the plaintiffs may forgo constitutionally protected speech—that is, they may choose not to say anything to assist or help parishioners or others in obtaining abortions. Or second, the plaintiffs may choose to engage in the constitutionally protected speech—and if they do this, the plaintiffs will be compelled to engage in additional speech and will face prosecution under a hopelessly vague statute because they will not know whether their additional speech is sufficient. Being put to this choice is irreparable injury.

Similarly, the registration-and-fee requirement imposes on the plaintiffs only two options. First, the plaintiffs may comply with an unconstitutional requirement to register and pay a fee—a registration they will never be able to erase from the public record and a fee that "is not refundable." Fla. Admin. Code r. 59A-9.035(3). Or second, the plaintiffs may forgo constitutionally protected speech. Being put to this choice is irreparable injury.

The Eleventh Circuit has repeatedly found irreparable injury in First
Amendment cases with facts no more compelling than these. In *KH Outdoor, LLC
v. City of Titusville*, 458 F.3d 1261 (11th Cir. 2006), the court said, "Regarding
irreparable injury, it is well established that '[t]he loss of First Amendment
freedoms, for even minimal periods of time, unquestionably constitutes irreparable
injury.' " 458 F.3d at 1271-72 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)
(plurality opinion)). The court acknowledged that a First Amendment violation
does not automatically require a finding of irreparable injury, but the court said
that "direct penalization, as opposed to incidental inhibition" of First Amendment
rights could be remedied only through an injunction. *Id*. at 1272 (quoting *Hohe v.
Casey*, 868 F.2d 69, 72–73 (3d Cir.1989)).

Here the plaintiffs face direct First Amendment violations and the possibility
of criminal prosecution. They have adequately shown irreparable harm.

## IX.  Balance of Harm

The third prerequisite to a preliminary injunction is that the threatened injury
to the plaintiffs outweighs whatever damage the proposed injunction may cause a
defendant.

Here the balance easily favors the plaintiffs. As set out above, the threatened
injury to the plaintiffs is substantial: the denial of constitutional rights and the

possibility of criminal prosecution. The threatened injury to the defendants, in contrast, is slight, for three reasons.

First, the defendants have proffered at best a weak, noncompelling interest in the enforcement of the challenged provisions. Second, the defendants have said, in effect, that the registration-and-fee requirement is unenforceable and that the compelled-speech and parental-notification provisions, although enforceable, will never actually be enforced. These assertions are incorrect—but the fact that the defendants advance them shows just how little injury the defendants will suffer if enjoined from enforcing the provisions. And third, the Secretary has adopted a rule that, if enforced, would render the statute virtually meaningless, making it inapplicable to the plaintiffs and to almost everyone else. Enjoining the defendants from enforcing a statute they have attempted to construe into oblivion will cause them no harm.

## X. The Public Interest

The final prerequisite to a preliminary injunction is that the injunction will not be adverse to the public interest. Complying with the Constitution is in the public interest. And enjoining the defendants from enforcing a statute they have said they do not intend to enforce will not disserve the public interest.

# XI. Security for Costs

Federal Rule of Civil Procedure 65(c) requires a party who obtains a preliminary injunction to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." This order requires the plaintiffs to give security for costs in a modest amount. Any party may move at any time to adjust the amount of security.

# XII. Conclusion

For these reasons,

IT IS ORDERED:

1. The motion for a primary injunction, ECF No. 7, is granted.

2. The defendant Justin Senior, in his official capacity as Secretary of the Florida Agency for Health Care Administration, must take no steps to enforce or apply against the plaintiffs the registration-and-fee provision, the compelled-speech provision, and the parental-notification provision as set out in Florida Statutes § 395.025.

3. The preliminary injunction set out in paragraph 2 will take effect upon the posting of security in the amount of $500 to pay the costs and damages sustained by any party found to have been wrongfully enjoined.

4. The preliminary injunction set out in paragraph 2 binds the defendant

Justin Senior and his officers, agents, servants, employees, and attorneys—and

others in active concert or participation with any of them—who receive actual

notice of the injunction by personal service or otherwise.

SO ORDERED on September 29, 2017.

s/Robert L. Hinkle_____
United States District Judge