## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### Tallahassee Division

------------------------------------------------------x
                                              :

REVEREND BRYAN G. FULWIDER,
WOMEN'S EMERGENCY
NETWORK, INC., EMERGENCY         :
MEDICAL ASSISTANCE, INC., PALM         :
BEACH COUNTY CHAPTER OF THE
NATIONAL ORGANIZATION FOR         :
WOMEN, INC., MIAMI WORKERS
CENTER, INC., RABBI ALAN E.         :
LITWAK, RABBI GARY
GLICKSTEIN, RABBI DAVID SPEY,         :
REVEREND HARRIS RIORDAN, and
REVEREND KATHY SCHMITZ,         :     No. 4:16-cv-0765-RH-CAS

     Plaintiffs,                :

     v.                        :

JUSTIN SENIOR, in his official capacity     :
as Secretary, Florida Agency for Health
Care Administration, and PAMELA         :
BONDI, in her official capacity as
Attorney General of the State of Florida,     :

     Defendants.               :
------------------------------------------------------x

## AMENDED COMPLAINT
## FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs, through counsel, bring this Complaint against the above-named Defendants, their employees, agents, delegates, and successors in office, and in support thereof state the following:

## INTRODUCTORY STATEMENT

1.     This action is brought pursuant to 42 U.S.C. § 1983 to vindicate rights secured by the First Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution.

2.     Plaintiffs challenge a Florida law that compels private noncommercial content- and viewpoint-based speech by mandating that friends, neighbors, family members, clergy, charitable groups, and others who counsel, or whose advice is sought by, a woman considering an abortion, provide a "full and detailed explanation of abortion, including the effects of and alternatives to abortion" and, "[i]f the person advised is a minor, [make] a good faith effort . . . to furnish such information to the parents or guardian of the minor."  (collectively, the "Compelled Speech Provision").  Fla. Stat. § 390.025(2).

3.     Pursuant to HB 1411, which was enacted on March 25, 2016, and parts of which became effective January 1, 2017 (the "Act"),[1] the law also requires that such friends, neighbors, family members, clergy, and charitable groups be

---

[1]     A copy of the Act, Ch. 2016-150, 2016 Fla. Laws, is annexed hereto as Exhibit A.

licensed and pay a fee before they help or advise a person about obtaining an abortion (the "License/Fee Requirement").  *Id.*  Violations of the Compelled Speech Provision are punished criminally by up to one year of incarceration.  Fla. Stat. § 390.025(6).

4.    The Compelled Speech Provision – including the parental notification requirement in respect of minors (the "Parental Notification Requirement") – and the License/Fee Requirement violate the United States Constitution in multiple respects.   The Compelled Speech Provision, Parental Notification Requirement, and License/Fee Requirement are referenced collectively herein as the "Challenged Provisions."

5.    *First*, the Challenged Provisions violate the First Amendment to the U.S. Constitution by imposing content-based and viewpoint-based pre-conditions (the License/Fee Requirement) on the ability of those subject to the law to speak with women seeking their counsel and by compelling them to engage in prescribed speech (the Compelled Speech Provision).  Specifically:

6.    The License/Fee Requirement constitutes an unprecedented content- and viewpoint-based prior restraint on nonprofessional speech because the speaker must register with, and pay a fee to, the Agency for Health Care Administration ("AHCA") before the speaker can speak about specified content (abortion) from a specified viewpoint (speech designed to aid abortion access).  That alone renders it

facially unconstitutional. In addition, the License/Fee Requirement unconstitutionally interferes with the speaker's interest in speaking with anonymity, by compelling the speaker to disclose his or her name during registration. The License/Fee Requirement also effectively bans a significant amount of spontaneous speech since, for instance, a person who has not previously registered may be asked for counselling or a referral on a holiday or weekend, when registration is not available.

7. The Compelled Speech Provision is an equally unprecedented interference with private noncommercial speech. It compels private, noncommercial speakers without medical expertise to deliver a state-mandated speech before aiding a woman seeking an abortion, in violation of the speaker's First Amendment right to decide for him- or herself what not to say. The Compelled Speech Provision's requirement that the same speech be given to the parents of minors (the Parental Notification Requirement) offends the rights of freedom of speech guaranteed by the First Amendment to the U.S. Constitution. And, the Compelled Speech Provision fails to explain the content and scope of the speech that those subject to it must deliver and, accordingly, the provision is unconstitutionally vague.

8. *Second,* the Parental Notification Requirement violates the right of privacy guaranteed by the Fourteenth Amendment to the U.S. Constitution in that

it forces members of the clergy, and others with whom a minor may consult about her reproductive choices, to provide the same explanation of abortion to her parents, thereby betraying the confidentiality of the most personal and intimate of discussions.   This forced disclosure of personal information contravenes the Constitutional right of privacy against forced disclosure of minors' information regarding personal sexual matters, and it violates the right to abortion by mandating parental notification by parties other than the abortion provider, and without even the judicial bypass that is constitutionally required for notification mandates that apply to abortion providers.

9.     *Third*, the License/Fee Requirement violates the right to freedom of association guaranteed by the U.S. Constitution by subjecting Plaintiffs and other Covered Persons to harassment and retaliation, without any compelling governmental interest to justify those consequences.

10.     *Fourth*, the License/Fee Requirement violates the Equal Protection Clause of the U.S. Constitution because it imposes a discriminatory licensure and fee requirement that targets those who provide advice or help to women in obtaining abortions, while not imposing a similar licensure and fee requirement on individuals and organizations that provide counselling on other medical and personal issues and/or seek to dissuade women from obtaining abortion.   This

amounts to improper state interference with the exercise of a constitutionally-protected right.

11.     Without relief from this Court, the Challenged Provisions will cause significant and irreparable harm to Plaintiffs and the women they serve.

12.     Before providing advice or assistance to a woman seeking an abortion – a constitutionally-guaranteed right – Plaintiffs will be forced to publicly declare themselves as "abortion referral agencies" and provide state-mandated speech that they would not otherwise provide, are not qualified to offer, and with which they do not agree, or else suffer criminal penalties.  This will compromise their ability to effectively counsel the women they seek to serve, who will be forced to forfeit the critical advice Plaintiffs would otherwise provide or be subjected to a state-sponsored message that their medical doctor is already legally required to deliver. And young women will suffer the indignity and intrusion of having those in whom they have reposed their trust and confidence be compelled to notify their parents of what they discussed, without even any opportunity to first seek relief from the court.

## JURISDICTION AND VENUE

13.     Subject-matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343.

14.    Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

15.    Venue in this judicial district is proper under 28 U.S.C. § 1391.

## THE PARTIES

### A.    Plaintiffs

16.    The Reverend Bryan G. Fulwider is President and CEO of Building US, a religious nonprofit in Orlando, Florida, working to create and strengthen interfaith and inter-community relations in Central Florida.  He leads a twice-monthly faith group, and provides one-on-one pastoral care and counselling.  From time to time women seek his spiritual counselling on unintended pregnancy, and he has counseled women, including minor women, on termination of pregnancy.  Given this experience, he believes that he meets the definition of an "abortion referral or counselling agency" under the Act and therefore is subject to the Challenged Provisions.  The Challenged Provisions force Reverend Fulwider to register and pay a fee to counsel women with respect to their reproductive choices and compel him to "provide a full and detailed explanation of abortion" that is undefined, that he is unqualified to provide, and that his parishioners do not seek from him.  But for the Challenged Provisions he would not provide the Compelled Speech because it would impair his relationships with the women he serves.

Forcing him to betray the confidence of his minor women parishioners by delivering the Compelled Speech to their parents harms those relationships. Accordingly, the Challenged Provisions infringe Reverend Fulwider's rights of free speech, free exercise of religion, freedom of association, equal protection, and due process, as well as the privacy and due process rights of the minors he may counsel. Reverend Fulwider reasonably fears that he will be prosecuted for non-compliance with these legal requirements. For these reasons, Reverend Fulwider sues on behalf of himself and his minor women parishioners.

17.     Women's Emergency Network, Inc. ("WEN") is a Florida nonprofit organization that subsidizes abortion care for South Florida low-income women and girls who cannot afford a safe legal procedure without financial assistance. WEN provides funding to a number of clinics, and directs women to those clinics via its website and pre-recorded telephone helpline. The clinics then use these funds to subsidize the cost of abortions when they feel it is appropriate. This funding system does not require that WEN have direct contact with the women whose abortions it subsidizes. However, five to ten times per week, women call WEN on its office line to ask where abortion services are available. In these instances, WEN gives them the name and contact information of the clinics WEN works with. Given this experience, WEN believes that it meets the definition of an "abortion referral or counselling agency" under the Act and therefore is subject to

the Challenged Provisions.  The Challenged Provisions force WEN to register and pay a fee to refer women to a clinic and compel it to "provide a full and detailed explanation of abortion" that is undefined, that WEN is unqualified to provide, and that women do not seek from WEN.  But for the Challenged Provisions WEN would not provide the Compelled Speech because it would impair its relationships with the women it serves.  Forcing WEN to betray the confidence of minor women by delivering the Compelled Speech to their parents harms those relationships, even though WEN does not know the age of the women who phone them. Accordingly, the Challenged Provisions infringe WEN's rights of free speech, freedom of association, equal protection, and due process, as well as the privacy and due process rights of the minors it may counsel.  WEN reasonably fears that it will be prosecuted for non-compliance with these legal requirements.  For these reasons, WEN sues on behalf of itself and its staff and volunteers.

18.     Emergency Medical Assistance, Inc. ("EMA") is a Florida nonprofit corporation that subsidizes abortion care for low-income women and girls in Palm Beach County and surrounding areas who cannot afford a safe legal procedure without financial assistance.  EMA provides funding to certain clinics, which use these funds to subsidize the cost of abortions when they feel it is appropriate. Hence, women generally learn of EMA's funding assistance from the clinic, without contacting EMA.  Women do sometimes seek information and referral

from EMA, and they generally obtain that from EMA's website or phone line recording.  However, extremely occasionally a woman emails EMA or leaves a message on EMA's phone line, asking where abortion services are available.  In these instances, EMA replies to the woman's email or phone message to give the woman the name and contact information of one of the clinics EMA works with.  Given this experience, EMA believes that it meets the definition of an "abortion referral or counselling agency" under the Act and therefore is subject to the Challenged Provisions.  The Challenged Provisions force EMA to register and pay a fee to refer women to a clinic and compel it to "provide a full and detailed explanation of abortion" that is undefined, that EMA is unqualified to provide, and that women do not seek from EMA.  But for the Challenged Provisions EMA would not provide the Compelled Speech, which would impair its relationships with the women it serves.  Forcing EMA to betray the confidence of minor women by delivering the Compelled Speech to their parents harms those relationships, even though EMA does not know the age of the women who contact EMA.  Accordingly, the Challenged Provisions infringe EMA's rights of free speech, freedom of association, equal protection, and due process, as well as the privacy and due process rights of the minors it may counsel.  EMA reasonably fears that it will be prosecuted for non-compliance with these legal requirements.  For these reasons, EMA sues on behalf of itself and its volunteers.

19.    The Palm Beach County Chapter of the National Organization for Women, Inc. ("NOW PBC") is a Florida nonprofit corporation and grassroots organization that works to promote feminist ideals, lead societal change, eliminate discrimination, and achieve and protect the equal rights of all women and girls. Women contact NOW PBC seeking advice or help with respect to an unintended pregnancy, including specifically referrals to an abortion provider, and NOW PBC refers certain of these women to a local clinic that provides abortion care.  Given this experience, NOW PBC believes that it meets the definition of an "abortion referral or counselling agency" under the Act and therefore is subject to the Challenged Provisions. The Challenged Provisions force NOW PBC to register and pay a fee to refer women to a clinic and compel it to "provide a full and detailed explanation of abortion" that is undefined, that NOW PBC is unqualified to provide, and that women do not seek from NOW PBC.  But for the Challenged Provisions NOW PBC would not provide the Compelled Speech because it would impair its relationships with the women it serves.  Forcing NOW PBC to betray the confidence of minor women by delivering the Compelled Speech to their parents harms those relationships, even though NOW PBC does not necessarily know the age of the women who contact NOW PBC.  Taken together, Challenged Provisions infringe NOW PBC's rights of free speech, freedom of association, equal protection, and due process, as well as the privacy and due

process rights of the minors it may counsel.  NOW PBC reasonably fears that it will be prosecuted for non-compliance with these legal requirements. For these reasons, NOW PBC sues on behalf of itself and its volunteers.

20.     The Miami Workers Center, Inc. ("MWC") is a Florida nonprofit corporation and social change community-based organization that fights for social, racial, economic, and gender justice in Miami, Florida.  As part of its work, MWC runs a bi-weekly women's circle where women of the community are given a safe space to discuss issues relevant to their lives, including reproductive health and family issues.  In this context, women have sought advice and help from MWC's Executive Director on unintended pregnancy, and MWC's Executive Director has provided referrals and other support to women who have chosen to have an abortion.   Given this experience, MWC believes that it meets the definition of an "abortion referral or counselling agency" under the Act and therefore is subject to the Challenged Provisions.  The Challenged Provisions force MWS to register and pay a fee to counsel women with respect to their reproductive choices and compel MWC to "provide a full and detailed explanation of abortion" that is undefined, that MWC is unqualified to provide, and that the women it serves do not seek from MWC.    But for the Challenged Provisions MWC would not provide the Compelled Speech because it would impair its relationships with the women it serves.  Forcing MWC to betray the confidence of any minor women who may

seek MWC's help by delivering the Compelled Speech to their parents harms those relationships. Accordingly, the Challenged Provisions infringe MWC's rights of free speech, freedom of association, equal protection, and due process, as well as the privacy and due process rights of the minors it may counsel. MWC reasonably fears that it, and/or its staff and volunteers, will be prosecuted for non-compliance with these legal requirements. For these reasons, MWC sues on behalf of itself and its staff and volunteers.

21.     Rabbi Alan E. Litwak is the Senior Rabbi at Temple Sinai in North Miami Beach, Florida. As Senior Rabbi, he is responsible for teaching, counselling, and leading worship in his congregation. In this capacity he has counselled women, including minor women, on termination of pregnancy. Given this experience, he believes that he meets the definition of an "abortion referral or counselling agency" under the Act and therefore is subject to the Challenged Provisions. The Challenged Provisions force him to register and pay a fee to counsel women with respect to their reproductive choices and compel him to "provide a full and detailed explanation of abortion" that is undefined, that he is unqualified to provide, and that his congregants do not seek from him. But for the Challenged Provisions he would not provide the Compelled Speech because it would impair his relationships with the women he serves. Forcing him to betray the confidence of his minor women congregants by delivering the Compelled

Speech to their parents harms those relationships. Accordingly, the Challenged Provisions infringe Rabbi Litwak's rights of free speech, free exercise of religion, freedom of association, equal protection, and due process, as well as the privacy and due process rights of the minors he may counsel. Rabbi Litwak reasonably fears that he will be prosecuted for non-compliance with these legal requirements. For these reasons, Rabbi Litwak sues on behalf of himself and his minor women congregants.

22.     Rabbi Gary Glickstein is the Rabbi at Temple Beth Sholom in Miami Beach, Florida. As Rabbi, he is responsible for teaching, counselling, and leading worship in his congregation. In this capacity he has counselled women, including minor women, on termination of pregnancy. Given this experience, he believes that he meets the definition of an "abortion referral or counselling agency" under the Act and therefore is subject to the Challenged Provisions. The Challenged Provisions force him to register and pay a fee to counsel women with respect to their reproductive choices and compel him to "provide a full and detailed explanation of abortion" that is undefined, that he is unqualified to provide, and that his congregants do not seek from him. But for the Challenged Provisions he would not provide the Compelled Speech because it would impair his relationships with the women he serves. Forcing him to betray the confidence of his minor women congregants by delivering the Compelled Speech to their parents harms

those relationships.   Accordingly, the Challenged Provisions infringe Rabbi Glickstein's rights of free speech, free exercise of religion, freedom of association, equal protection, and due process, as well as the privacy and due process rights of the minors he may counsel.   Rabbi Glickstein reasonably fears that he will be prosecuted for non-compliance with these legal requirements.   For these reasons, Rabbi Glickstein sues on behalf of himself and his minor women congregants.

23.    Rabbi David Spey is the Rabbi at Temple Bat Yam in East Fort Lauderdale, Florida.   As Rabbi, he is responsible for teaching, counselling, and leading worship in his congregation.   In this capacity he has counselled women on termination of pregnancy.   Given this experience, he believes that he meets the definition of an "abortion referral or counselling agency" under the Act and therefore is subject to the Challenged Provisions.  The Challenged Provisions force him to register and pay a fee to counsel women with respect to their reproductive choices and compel him to "provide a full and detailed explanation of abortion" that is undefined, that he is unqualified to provide, and that his congregants do not seek from him.   But for the Challenged Provisions he would not provide the Compelled Speech because it would impair his relationships with the women he serves.  Forcing him to betray the confidence of his minor women congregants by delivering the Compelled Speech to their parents harms those relationships.  Accordingly, the Challenged Provisions infringe Rabbi Spey's rights

of free speech, free exercise of religion, freedom of association, equal protection, and due process, as well as the privacy and due process rights of the minors he may counsel.   Rabbi Spey reasonably fears that he will be prosecuted for non-compliance with these legal requirements.   For these reasons, Rabbi Spey sues on behalf of himself and his minor women congregants.

24.     Reverend Harris Riordan is the Minister of the Unitarian Universalist Fellowship of Boca Raton, Florida.  As Minister, she is responsible for teaching, counselling, and leading worship in her congregation.  In this capacity she has counselled women on termination of pregnancy.   Given this experience, she believes that she meets the definition of an "abortion referral or counselling agency" under the Act and therefore is subject to the Challenged Provisions.  The Challenged Provisions force Reverend Riordan to register and pay a fee to counsel women with respect to their reproductive choices and compel her to "provide a full and detailed explanation of abortion" that is undefined, that she is unqualified to provide, and that her congregants do not seek from her.  But for the Challenged Provisions she would not provide the Compelled Speech because it would impair her relationships with the women she serves.   Forcing her to betray the confidence of her minor women congregants by delivering the Compelled Speech to their parents harms those relationships.   Accordingly, the Challenged Provisions infringe Reverend Riordan's rights of free speech, free exercise of religion,

-16-

freedom of association, equal protection, and due process, as well as the privacy and due process rights of the minors she may counsel. Reverend Riordan reasonably fears that she will be prosecuted for non-compliance with these legal requirements. For these reasons, Reverend Riordan sues on behalf of herself and her minor women congregants.

25.     Reverend Kathy Schmitz is the Minister of the First Unitarian Church of Orlando, Florida. As Minister, she is responsible for teaching, counselling, and leading worship in her congregation. In this capacity she has counselled women on termination of pregnancy. Given this experience, she believes that she meets the definition of an "abortion referral or counselling agency" under the Act and therefore is subject to the Challenged Provisions. The Challenged Provisions force Reverend Schmitz to register and pay a fee to counsel women with respect to their reproductive choices and compel her to "provide a full and detailed explanation of abortion" that is undefined, that she is unqualified to provide, and that her congregants do not seek from her. But for the Challenged Provisions she would not provide the Compelled Speech because it would impair her relationships with the women she serves. Forcing her to betray the confidence of her minor women congregants by delivering the Compelled Speech to their parents harms those relationships. Accordingly, the Challenged Provisions infringe Reverend Schmitz's rights of free speech, free exercise of religion, freedom of association,

equal protection, and due process, as well as the privacy and due process rights of the minors she may counsel.  Reverend Schmitz reasonably fears that she will be prosecuted for non-compliance with these legal requirements.  For these reasons, Reverend Schmitz sues on behalf of herself and her minor women congregants.

### B.    Defendants

#### 1.  Agency for Health Care Administration

26.    Defendant Justin M. Senior is the Secretary of AHCA and in that capacity is responsible for AHCA's activities.  AHCA is responsible for, and has a substantial connection to, the Challenged Provisions.

27.    Among other enforcement responsibilities related to the Challenged Provisions, AHCA is charged with investigating any alleged violation of any of the Challenged Provisions and may assess against an alleged offender the costs that AHCA incurs in an investigation that leads to a successful prosecution.   AHCA is the agency responsible for promulgating regulations pursuant to the Challenged Provisions. *See, e.g.*, Fla. Stat. § 390.025(3), (5), & (6); Fla. Admin. Code r. 59A-9.035.

28.    Defendant Senior is sued in his official capacity, as are his successors.

#### 2.  Florida Attorney General

29.    Defendant Pamela Bondi is the Attorney General of the State of Florida and in that capacity is responsible for the activities of the Office of the

Attorney General of the State of Florida.   Defendant Bondi is responsible for, and has a substantial connection to, the Challenged Provisions.

30.    The Attorney General has broad powers of criminal and civil law enforcement under Florida Law.

31.    Among other law enforcement authority, the Attorney General is charged with "exercis[ing] general superintendence and direction over the several state attorneys of the several circuits" who initiate criminal prosecutions at the trial level, including under the criminal provisions of the Challenged Provisions.  Fla. Stat. § 16.08.   The Attorney General has primary responsibility for prosecuting and defending appeals in criminal cases, including any cases brought under the Challenged Provisions.  Fla. Stat. § 16.01(4).

32.    Given its broad law enforcement authority, the Attorney General "has the important responsibility of ensuring that all victims of crime are fully informed of all litigation that occurs in a criminal case" and therefore "constantly communicate[s] with the victims and their families throughout the duration of the criminal case."[2]

33.    Defendant Bondi is sued in her official capacity, as are her successors.

_____

[2]Florida Office of the Attorney General, *Criminal Appeals* (Jan. 8, 2018, 2:47PM), http://www.myfloridalegal.com/pages.nsf/Main/7295A759CF3FB5C 985256CC600587A33.

## THE CHALLENGED STATUTORY PROVISIONS

34.     The Challenged Provisions are codified in Fla. Stat. § 390.025, which

provides:

> (1)     As used in this section, an "abortion referral or counseling agency" is any person, group, or organization, whether funded publicly or privately, that provides advice or help to persons in obtaining abortions.

> (2)     An abortion referral or counseling agency, before making a referral or aiding a person in obtaining an abortion, shall furnish such person with a full and detailed explanation of abortion, including the effects of and alternatives to abortion. If the person advised is a minor, a good faith effort shall be made by the referral or counseling agency to furnish such information to the parents or guardian of the minor. No abortion referral or counseling agency shall charge or accept any fee, kickback, or compensation of any nature from a physician, hospital, clinic, or other medical facility for referring a person thereto for an abortion.

> (3)     An abortion referral or counseling agency, as defined in subsection (1), shall register with the Agency for Health Care Administration. To register or renew a registration an applicant must pay an initial or renewal registration fee established by rule, which must not exceed the costs incurred by the agency in administering this section. Registrants must include in any advertising materials the registration number issued by the agency and must renew their registration biennially.

> (4)     The following are exempt from the requirement to register pursuant to subsection (3):

>> (a)     Facilities licensed pursuant to this chapter, chapter 395, chapter 400, or chapter 408;

>> (b)     Facilities that are exempt from licensure as a clinic under s. 400.9905(4) and that refer five or fewer patients for abortions per month; and

(c)     Health care practitioners, as defined in s. 456.001, who, in the course of their practice outside of a facility licensed pursuant to this chapter, chapter 395, chapter 400, or chapter 408, refer five or fewer patients for abortions each month.

(5)     The agency shall adopt rules to administer this section and part II of chapter 408.

(6)     Any person who violates the provisions of subsection (2) commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.  In addition to any other penalties imposed pursuant to this chapter, the Agency for Health Care Administration may assess costs related to an investigation of violations of this section which results in a successful prosecution. Such costs may not include attorney fees.

35.     The Act was passed by the Florida Legislature as part of omnibus abortion legislation which was designed to "get Florida out of the abortion business."  *See* Florida Legislative Approves Controversial Abortion Restrictions, Reuters.com, March 9, 2016, available at http://www.reuters.com/article/us-florida-abortion-idUSKCN0WB2QM.

36.     Two of the Act's various provisions were declared unconstitutional by this Court in *Planned Parenthood of Southwest and Central Florida v. Philip*, No. 4:16CV321–RH/CAS, 2016 WL 3556568, at *5 (N.D. Fla. June 30, 2016), and a third was narrowed and clarified by the AHCA to avoid constitutional infirmity. *Id.*, at *8.  This case challenges a fourth provision, comprised of the License/Fee Requirement, the Compelled Speech Provision and the Parental Notification

Requirement.   According to Defendants Senior and Bondi, one purpose of the License/Fee Requirement in particular is to "require . . . abortion advisors [to] reveal themselves via registration, so that the public may know who they are and associate them with the rights accorded to the public under section 390.025, *including the right to seek enforcement"* of the criminal provisions.  *See* ECF No. 31 at 25 n.4 (emphasis added)

37.     By Preliminary Injunction dated September 29, 2017 (ECF No. 43) (the "Preliminary Injunction"), this Court granted Plaintiffs' Motion for Preliminary Injunction (ECF No. 7) with respect to the Challenged Provisions. The Preliminary Injunction specifically provides that "defendant Justin Senior, in his official capacity as Secretary of the Florida Agency for Health Care Administration, must take no steps to enforce or apply against the plaintiffs the registration-and-fee provision, the compelled-speech provision, and the parental-notification provision as set out in Florida Statutes §§ 390.025."

## "COVERED PERSONS"

38.     The range of persons to whom the Challenged Provisions apply is exceptionally broad: "any person, group, or organization…that provides advice or help to persons in obtaining abortions."   (the "Covered Persons").   Fla. Stat. § 390.025(1).   These Covered Persons would include doctors, medical offices, clinics, hospitals, or other facilities that may provide, or refer women elsewhere

for, abortion services.  But Covered Persons would also include a wide range of individuals and organizations that provide no professional services but that simply provide referrals or give advice or other assistance to a woman considering an abortion, including friends, neighbors, family members, co-workers, charitable organizations, attorneys, clergy, women's advocacy organizations, domestic violence shelters, and sexual assault survivor centers, among innumerable others.

## THE COMPELLED SPEECH PROVISION

39.    The Compelled Speech Provision requires any Covered Person, before "making a referral or aiding a person in obtaining an abortion," to furnish a "full and detailed explanation of abortion, including the effects of and alternatives to abortion."  All Covered Persons are bound by the Compelled Speech Provision to deliver this state-mandated speech regardless of how many or how few women they may assist or refer for abortion care.

40.    The breadth of the conduct that triggers this obligation  – "making a referral or aiding a person in obtaining an abortion" – extends the Compelled Speech Provision to all manner of assistance a woman may receive in considering an abortion, including making an express referral to an abortion provider, suggesting a local reproductive rights organization for a referral, offering tips on how to conduct a Google search for abortion providers, volunteering to drive a

woman to an abortion clinic, or assisting a low-income woman in paying for the care she seeks.

41.    The Compelled Speech Provision gives Covered Persons no guidance as to what the mandated "explanation of abortion" must contain, other than that it must be "full and detailed" and cover the "effects" of and "alternatives" to abortion.

42.    Plaintiffs would not engage in such speech in the absence of the Compelled Speech Provision.

43.    The Compelled Speech Provision requires Covered Persons to deliver a "full and detailed" speech about abortion, notwithstanding that many will not have the background necessary to do so.   Indeed, Plaintiffs, who are ministers, rabbis, and volunteers in community centers, are trained in neither medicine generally nor abortion procedures specifically.   As a result, Plaintiffs lack the information and expertise necessary to provide a full and detailed explanation of abortion, its effects, and its alternatives.

44.    Moreover, women generally do not seek Plaintiffs' counsel on the medical details of abortion and its alternatives.  Rather, Plaintiffs are consulted on the personal, moral, religious, and economic implications of various reproductive health choices.  Responding to a woman's request for such non-medical advice by

providing an unsolicited explanation of abortion would impair Plaintiffs' relationship with the women they serve and burden the message they wish to communicate to these women.

45.    The Compelled Speech Provision is redundant and unnecessary in any event.  Under Florida law, before a woman is able to have an abortion, her doctor is *already* required to provide her with the very information the Compelled Speech Provision would require Plaintiffs to provide.

46.    Specifically, pursuant to Fla. Stat. § 390.0111(3), no termination of pregnancy may be performed or induced "except with the voluntary and informed written consent of the pregnant woman or, in the case of a mental incompetent, the voluntary and informed written consent of her court-appointed guardian." Accordingly, prior to conducting an abortion, a doctor must inform a woman of "[t]he nature and risks of undergoing or not undergoing the proposed procedure that a reasonable patient would consider material to making a knowing and willful decision of whether to terminate a pregnancy." Fla. Stat. § 390.0111(a)(1)(a); *see also id.* § 390.0111(a)(1)(c) (doctor must inform the woman of "[t]he medical risks to the woman and fetus of carrying the pregnancy to term"). A doctor must further provide the woman with state-produced printed materials that include "[a] description of the fetus, including a description of the various stages of development . . . [a] list of entities that offer alternatives to terminating the

-25-

pregnancy . . . [and] [d]etailed information on the availability of medical assistance benefits for prenatal care, childbirth, and neonatal care." Fla. Stat. § 390.0111(a)(2). Moreover, under Florida law, prior to providing abortion services to a minor woman, a medical provider must provide notice to the minor's parent, subject to the minor's ability to seek a judicial order obviating the notice requirement. Fla. Stat. § 390.01114.

## THE LICENSE/FEE REQUIREMENT

47. The License/Fee Requirement mandates that a Covered Person register with AHCA and pay a fee in order to be able to provide advice or help to a person in obtaining an abortion.

48. Pursuant to Rule 59A-9.035, Florida Administrative Code ("Abortion Referral or Counselling Agency Registration"), the Registration Fee will be $200, which must be paid upon initial registration and renewal every two years. That same provision requires Covered Persons to post their current Abortion Referral or Counseling Agency "registration . . . in a conspicuous place within the premises where it can be viewed by patients." *Id.* 59A-9.035(4). This is so despite the fact that the women counseled are not limited to "patients," and there is no requirement that the women meet with the Covered Persons in any "premises."

49. The License/Fee Requirement exempts from coverage certain licensed healthcare facilities like abortion clinics, hospitals, and ambulatory care centers,

Fla. Stat. § 390.025(4)(a), and exempts a wider range of other health facilities and medical providers that make five or less referrals per month, Fla. Stat. § 390.025(4)(b)-(c).     Thus, non-medical Covered Persons with no role whatsoever in the provision of abortion services must comply with the License/Fee Requirement no matter how infrequently they advise or help a woman in obtaining an abortion.

50.    The License/Fee Requirement is a content-based speech restriction, because Plaintiffs and other Covered Persons are free to advise (*i.e.*, speak to) clients and congregants about any subject at all without registering and paying a fee.   They can advise a pregnant woman about prenatal care and refer to her a physician to provide her such care.   They can also advise a pregnant woman about placing a child for adoption and refer her to an agency that can assist her in doing so.   But in order to advise that same woman about abortion care and/or offer to refer her to a physician to provide such care – that is, the moment the content of their speech is abortion – Plaintiffs are forced to register and pay the state a fee.

51.    The License/Fee Requirement is also a viewpoint-based speech restriction.   It is not just speech to pregnant women on the subject of abortion that triggers the Challenged Provisions' burdens, but speech that aids rather than dissuades that the law singles out for regulation.   If, rather than "aiding" a woman seeking an abortion, Plaintiffs were to discourage a woman from obtaining an

abortion (and refer her instead to an antiabortion crisis pregnancy center), they could do so without being forced to register or pay a fine.

52.    The act of registering as an Abortion Referral or Counselling Agency is not without consequence.  Abortion providers, individuals seeking abortion, and abortion clinic staff have long been the target of anti-abortion activists' harassment, threats, and intimidation.  Registration thus exposes Plaintiffs and the women they serve to the risk of similar retaliatory action from anti-abortion activists.  Moreover, for those who have previously engaged in counselling subject to the Challenged Provisions but have not provided the Compelled Speech in doing so, compliance with the License/Fee Requirement puts them at risk of self-incrimination with respect to prior prohibited conduct.

## THE PARENTAL NOTIFICATION REQUIREMENT

53.    All Covered Persons are further subject to the Parental Notification Provision, which requires a Covered Person who makes a referral or otherwise offers assistance to a minor who is seeking an abortion to make a "good faith effort . . . to furnish" the information required by the Compelled Speech Provision "to the parents or guardians of the minor."  Fla. Stat. § 390.025(2).

54.    The Parental Notification Requirement purports to govern the highly personal and private communications between a woman considering an abortion and trusted counsellors she may consult for advice in making that decision.  By

requiring a Covered Person to provide the parents or guardian of a minor with information regarding an abortion, the Parental Notification Requirement necessarily requires that the Covered Person inform the minor's parents or guardian that she has sought consultation regarding access to an abortion. This requirement applies regardless of whether the minor is a victim of abuse; whether the minor ultimately decides to remain pregnant; and whether the minor later – perhaps the day after seeking advice or a referral from the Covered Person – finds out that she is not in fact pregnant.

55.     The Act does not contain a judicial bypass option, which – if it were permissible to mandate parental notification for a minor seeking advice, rather than only for a minor actually getting an abortion – would allow a minor to seek waiver of the Parental Notification Requirement.

56.     As noted above, Florida law already requires parental notification by the abortion provider before a minor can obtain an abortion, but provides a judicial bypass alternative to that requirement. The Parental Notification Requirement imposes an additional requirement of parental notification for a minor who has sought aid or advice concerning abortion, but without any judicial bypass alternative.

57.     Plaintiffs and the women they serve have no adequate remedy at law for the constitutional deprivations caused by the Challenged Provisions.

## COMBINED IMPACT ON CLERGY

58.     The Challenged Provisions burden, restrict, and interfere with the spiritual, privileged communications between a member of the clergy and the person seeking his or her spiritual guidance.  The Compelled Speech Provision mandates that clergy impart certain information they would not otherwise impart, and – unless they do so – prohibits them from providing guidance and assistance that they are called by their faith to provide.  The License/Fee Requirement requires clergy to register and pay a fee before they may provide spiritual counseling.  The Parental Notification Requirement compels them to breach the confidentiality of their spiritual and religious communications with individual parishioners or congregants in violation of their faith and their sincerely held religious beliefs.

## CLAIMS FOR RELIEF

### COUNT I
**(Compelled Speech Provision – Freedom of Speech – U.S. Constitution)**

59.     Plaintiffs hereby incorporate Paragraphs 1 through 58 as though fully set forth herein.

60.     The Compelled Speech Provision violates rights guaranteed to Plaintiffs under the First Amendment to the U.S. Constitution because it compels

Plaintiffs to convey a state-mandated message regarding abortion which, but for the Compelled Speech Provision, Plaintiffs would not otherwise provide and subjects them to criminal penalties if they do not comply.

## COUNT II

### (Compelled Speech Provision – Vagueness – U.S. Constitution)

61.     Plaintiffs hereby incorporate Paragraphs 1 through 58 as though fully set forth herein.

62.     The Compelled Speech Provision violates rights guaranteed to Plaintiffs under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution because it fails to give adequate notice as to what speech may be criminalized and encourages arbitrary and discriminatory enforcement.

## COUNT III

### (License/Fee Requirement – Freedom of Speech – U.S. Constitution)

63.     Plaintiffs hereby incorporate Paragraphs 1 through 58 as though fully set forth herein.

64.     The License/Fee Requirement violates rights guaranteed to Plaintiffs under the First Amendment of the U.S. Constitution because it (a) imposes a prior restraint on Plaintiffs, who are neither learned professionals nor commercial speakers, by requiring them to register with AHCA before they can speak; (b) imposes a content- and viewpoint-based burden on speech; (c) interferes with

Plaintiffs' interest in speaking with anonymity by requiring disclosure of their name during registration; and (d) bans a significant amount of spontaneous speech.

## COUNT IV
### (License/Fee Requirement – Freedom of Association – U.S. Constitution)

65.     Plaintiffs hereby incorporate Paragraphs 1 through 58 as though fully set forth herein.

66.     The License/Fee Requirement violates rights guaranteed to Plaintiffs under the First Amendment to the U.S. Constitution because, by requiring Plaintiffs to publicly register as an "abortion referral or counselling agency," it subjects Plaintiffs to potential harassment and retaliation, thus violating Plaintiffs' right to freedom of association.

## COUNT V
### (License/Fee Requirement – Equal Protection – U.S. Constitution)

67.     Plaintiffs hereby incorporate Paragraphs 1 through 58 as though fully set forth herein.

68.     The License/Fee Requirement violates rights guaranteed to Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution because it treats them differently than other persons who counsel women on their options regarding pregnancy, including persons who advise

women against obtaining abortions.  The License/Fee Requirement thus amounts to a discriminatory tax that violates the rights of women and their service providers.

## COUNT VI
### (Parental Notification Provision – Right to Informational Privacy – U.S. Constitution)

69.     Plaintiffs hereby incorporate Paragraphs 1 through 58 as though fully set forth herein.

70.     The Parental Notification Provision violates rights guaranteed to minor persons to whom Plaintiffs provide advice or help in obtaining abortions under the Fourteenth Amendment to the U.S. Constitution because it requires Plaintiffs to furnish information to such minor's parents, thereby disclosing the fact of the minor's pregnancy and consideration of abortion, and thus violating the right to privacy.

## COUNT VII
### (Parental Notification Provision – Right to Privacy – U.S. Constitution)

71.     Plaintiffs hereby incorporate Paragraphs 1 through 58 as though fully set forth herein.

72.     The Parental Notification Provision violates rights guaranteed to minor persons to whom Plaintiffs provide advice or help in obtaining abortions

under the Fourteenth Amendment to the U.S. Constitution because it imposes a requirement of parental notification without providing a judicial bypass alternative.

## COUNT VIII

**(Compelled Speech, License/Fee, and Parental Notification Provisions – Free Exercise of Religion – U.S. Constitution)**

73.     Plaintiffs hereby incorporate Paragraphs 1 through 58 as though fully set forth herein.

74.     The Compelled Speech, License/Fee, and Parental Notifications Provisions violate rights guaranteed to Plaintiff clergy members from whom adult and minor parishioners or congregants seek spiritual advice or help in obtaining abortions under the free exercise clause of the First Amendment to the U.S. Constitution because they burden, restrict, and interfere with that spiritual and privileged communication, and require clergy members to breach the confidentiality of communications with minor parishioners or congregants, all in violation of their professional obligations as faith leaders, and subjects them to criminal penalties if they do not comply.

## <u>RELIEF REQUESTED</u>

**WHEREFORE, Plaintiffs request that this Court:**

**A.** Issue a declaratory judgment that Fla. Stat. § 390.025 is unconstitutional under the United States Constitution;

**B.** Issue preliminary and permanent injunctive relief enjoining the enforcement, operation, and execution of Fla. Stat. § 390.025;

**C.** Grant Plaintiffs' attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

**D.** Grant such further relief as this Court deems just and proper.

Dated: January 16, 2018

Respectfully submitted,

/s/ <u>James K. Green, Esq.</u>
Florida Bar No: 229466
JAMES K. GREEN, P.A.
Suite 1650, Esperanté
222 Lakeview Ave.
West Palm Beach, Florida 33401
(561) 659-2029 (telephone)
(561) 655-1357 (facsimile)
jkg@jameskgreenlaw.com
(Trial Counsel, and Cooperating Attorney for
the American Civil Liberties Union Foundation
of Florida, Inc.)

Nancy Abudu, Esq.
Florida Bar No: 111881
Legal Director
American Civil Liberties Union
Foundation of Florida, Inc.
4500 Biscayne Blvd, Suite 340
Miami, Florida 33137
Tel: (786) 363-2700

Andrew Beck (admitted *pro hac vice*)
American Civil Liberties Union
125 Broad Street
New York, New York 10004
Tel: (212) 284-7000
tcamp@aclu.org
abeck@aclu.org

Mary Eaton (admitted *pro hac vice*)
Wesley R. Powell (admitted *pro hac vice*)
Andrew Hanrahan (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
meaton@willkie.com
wpowell@willkie.com
ahanrahan@willkie.com

*Counsel for Plaintiffs*

# EXHIBIT A

# CHAPTER 2016-150

## Committee Substitute for
## Committee Substitute for House Bill No. 1411

An act relating to termination of pregnancies; amending s. 390.011, F.S.; defining the term "gestation" and revising the term "third trimester"; amending s. 390.0111, F.S.; revising the requirements for disposal of fetal remains; revising the criminal punishment for failure to properly dispose of fetal remains; prohibiting state agencies, local governmental entities, and Medicaid managed care plans from expending or paying funds to or initiating or renewing contracts under certain circumstances with certain organizations that perform abortions; providing exceptions; amending s. 390.0112, F.S.; requiring directors of certain hospitals and physicians' offices and licensed abortion clinics to submit monthly reports to the Agency for Health Care Administration on a specified form; prohibiting the report from including personal identifying information; requiring the agency to submit certain data to the Centers for Disease Control and Prevention on a quarterly basis; amending s. 390.012, F.S.; requiring the agency to develop and enforce rules relating to license inspections and investigations of certain clinics; requiring the agency to adopt rules to require all physicians performing abortions to have admitting privileges at a hospital within a reasonable proximity unless the clinic has a transfer agreement with the hospital; revising requirements for rules that prescribe minimum recovery room standards; revising requirements for the disposal of fetal remains; requiring the agency to submit an annual report to the Legislature; amending s. 390.014, F.S.; providing a different limitation on the amount of a fee; amending s. 390.025, F.S.; requiring certain organizations that provide abortion referral services or abortion counseling services to register with the agency, pay a specified fee, and include certain information in advertisements; requiring biennial renewal of a registration; providing exemptions from the registration requirement; requiring the agency to adopt rules; providing for the assessment of costs in certain circumstances; amending s. 873.05, F.S.; prohibiting an offer to purchase, sell, donate, or transfer fetal remains obtained from an abortion and the purchase, sale, donation, or transfer of such remains, excluding costs associated with certain transportation of remains; providing an appropriation; providing effective dates.

Be It Enacted by the Legislature of the State of Florida:

Section 1. Present subsections (6) through (12) of section 390.011, Florida Statutes, are redesignated as subsections (7) through (13), respectively, a new subsection (6) is added to that section, and present subsection (11) of that section is amended, to read:

390.011   Definitions.—As used in this chapter, the term:

1

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

Exhibit "A"

(6)  "Gestation" means the development of a human embryo or fetus between fertilization and birth.

(12)(11)  "Third Trimester" means one of the following three distinct periods of time in the duration of a pregnancy:

(a)  "First trimester," which is the period of time from fertilization through the end of the 11th week of gestation.

(b)  "Second trimester," which is the period of time from the beginning of the 12th week of gestation through the end of the 23rd week of gestation.

(c)  "Third trimester," which is the period of time from the beginning of the 24th week of gestation through birth the weeks of pregnancy after the 24th week of pregnancy.

Section 2.  Subsection (7) of section 390.0111, Florida Statutes, is amended, and subsection (15) is added to that section, to read:

390.0111  Termination of pregnancies.—

(7)  FETAL REMAINS.—Fetal remains shall be disposed of in a sanitary and appropriate manner pursuant to s. 381.0098 and rules adopted thereunder and in accordance with standard health practices, as provided by rule of the Department of Health. Failure to dispose of fetal remains in accordance with this subsection department rules is a misdemeanor of the first second degree, punishable as provided in s. 775.082 or s. 775.083.

(15)  USE OF PUBLIC FUNDS RESTRICTED.—A state agency, a local governmental entity, or a managed care plan providing services under part IV of chapter 409 may not expend funds for the benefit of, pay funds to, or initiate or renew a contract with an organization that owns, operates, or is affiliated with one or more clinics that are licensed under this chapter and perform abortions unless one or more of the following applies:

(a)  All abortions performed by such clinics are:

1.  On fetuses that are conceived through rape or incest; or

2.  Are medically necessary to preserve the life of the pregnant woman or to avert a serious risk of substantial and irreversible physical impairment of a major bodily function of the pregnant woman, other than a psychological condition.

(b)  The funds must be expended to fulfill the terms of a contract entered into before July 1, 2016.

(c)  The funds must be expended as reimbursement for Medicaid services provided on a fee-for-service basis.

Section 3.  Subsection (1) of section 390.0112, Florida Statutes, is amended, present subsections (2), (3), and (4) of that section are

CODING: Words stricken are deletions; words underlined are additions.

redesignated as subsections (3), (4), and (5), respectively, and a new subsection (2) is added to that section, to read:

390.0112   Termination of pregnancies; reporting.—

(1)   The director of any medical facility in which <u>abortions are performed, including a physician's office,</u> ~~any pregnancy is terminated~~ shall submit a ~~monthly~~ report <u>each month</u> to the agency. <u>The report may be submitted electronically, may not include personal identifying information, and must include:</u>

<u>(a)   Until the agency begins collecting data under paragraph (e), the number of abortions performed.</u>

<u>(b)   The reasons such abortions were performed.</u>

<u>(c)   For each</u> abortion, <u>the period of gestation at the time the abortion was performed.</u>

<u>(d)</u>   ~~which contains the number of procedures performed, the reason for same, the period of gestation at the time such procedures were performed, and~~ The number of infants born alive <u>or alive</u> ~~during or~~ immediately after an attempted abortion.

<u>(e)   Beginning no later than January 1, 2017, information consistent with the United States Standard Report of Induced Termination of Pregnancy adopted by the Centers for Disease Control and Prevention.</u>

<u>(2)</u>   The agency shall <u>keep</u> ~~be responsible for keeping~~ such reports in a central <u>location for the purpose of compiling and analyzing</u> ~~place from which~~ statistical data and <u>shall submit data reported pursuant to paragraph (1)(e) to the Division of Reproductive Health within the Centers for Disease Control and Prevention, as requested by the Centers for Disease Control and Prevention</u> ~~analysis can be made~~.

Section 4.   Paragraph (c) of subsection (1), subsection (2), paragraphs (c) and (f) of subsection (3), and subsection (7) of section 390.012, Florida Statutes, are amended, and subsection (8) is added to that section, to read:

390.012   Powers of agency; rules; disposal of fetal remains.—

(1)   The agency may develop and enforce rules pursuant to ss. 390.011-390.018 and part II of chapter 408 for the health, care, and treatment of persons in abortion clinics and for the safe operation of such clinics.

(c)   The rules shall provide for:

1.   The performance of pregnancy termination procedures only by a licensed physician.

2.   The making, protection, and preservation of patient records, which shall be treated as medical records under chapter 458. <u>When performing a</u>

3

license inspection of a clinic, the agency shall inspect at least 50 percent of patient records generated since the clinic's last license inspection.

3. Annual inspections by the agency of all clinics licensed under this chapter to ensure that such clinics are in compliance with this chapter and agency rules.

4. The prompt investigation of credible allegations of abortions being performed at a clinic that is not licensed to perform such procedures.

(2) For clinics that perform abortions in the first trimester of pregnancy only, these rules must shall be comparable to rules that apply to all surgical procedures requiring approximately the same degree of skill and care as the performance of first trimester abortions and must require:

(a) Clinics to have a written patient transfer agreement with a hospital within reasonable proximity to the clinic which includes the transfer of the patient's medical records held by the clinic and the treating physician to the licensed hospital; or

(b) Physicians who perform abortions at the clinic to have admitting privileges at a hospital within reasonable proximity to the clinic.

(3) For clinics that perform or claim to perform abortions after the first trimester of pregnancy, the agency shall adopt rules pursuant to ss. 120.536(1) and 120.54 to implement the provisions of this chapter, including the following:

(c) Rules relating to abortion clinic personnel. At a minimum, these rules shall require that:

1. The abortion clinic designate a medical director who is licensed to practice medicine in this state, and all physicians who perform abortions in the clinic have who has admitting privileges at a licensed hospital within reasonable proximity to the clinic, unless the clinic in this state or has a written patient transfer agreement with a licensed hospital within reasonable proximity to of the clinic which includes the transfer of the patient's medical records held by both the clinic and the treating physician.

2. If a physician is not present after an abortion is performed, a registered nurse, licensed practical nurse, advanced registered nurse practitioner, or physician assistant shall be present and remain at the clinic to provide postoperative monitoring and care until the patient is discharged.

3. Surgical assistants receive training in counseling, patient advocacy, and the specific responsibilities associated with the services the surgical assistants provide.

4. Volunteers receive training in the specific responsibilities associated with the services the volunteers provide, including counseling and patient

CODING: Words stricken are deletions; words underlined are additions.

advocacy as provided in the rules adopted by the director for different types of volunteers based on their responsibilities.

(f) Rules that prescribe minimum recovery room standards. At a minimum, these rules <u>must</u> ~~shall~~ require that:

1. Postprocedure recovery rooms <u>be</u> ~~are~~ supervised and staffed to meet the patients' needs.

2. Immediate postprocedure care <u>consist</u> ~~consists~~ of observation in a supervised recovery room for as long as the patient's condition warrants.

~~3. The clinic arranges hospitalization if any complication beyond the medical capability of the staff occurs or is suspected.~~

<u>3.</u>~~4.~~ A registered nurse, licensed practical nurse, advanced registered nurse practitioner, or physician assistant who is trained in the management of the recovery area and is capable of providing basic cardiopulmonary resuscitation and related emergency procedures <u>remain</u> ~~remains~~ on the premises of the abortion clinic until all patients are discharged.

<u>4.</u>~~5.~~ A physician ~~shall~~ sign the discharge order and be readily accessible and available until the last patient is discharged to facilitate the transfer of emergency cases if hospitalization of the patient or viable fetus is necessary.

<u>5.</u>~~6.~~ A physician <u>discuss</u> ~~discusses~~ Rho(D) immune globulin with each patient for whom it is indicated and <u>ensure</u> ~~ensures~~ that it is offered to the patient in the immediate postoperative period or ~~that it~~ will be available to her within 72 hours after completion of the abortion procedure. If the patient refuses the Rho(D) immune globulin, <u>she and a witness must sign</u> a refusal form approved by the agency <u>which must be</u> ~~shall be signed by the patient and a witness and~~ included in the medical record.

<u>6.</u>~~7.~~ Written instructions with regard to postabortion coitus, signs of possible problems, and general aftercare <u>which are specific to the patient</u> be ~~are~~ given to each patient. <u>The instructions must include information</u> ~~Each patient shall have specific written instructions~~ regarding access to medical care for complications, including a telephone number <u>for use in the event of a</u> ~~to call for~~ medical <u>emergency</u> ~~emergencies~~.

<u>7.</u>~~8.~~ ~~There is~~ A ~~specified~~ minimum length of time <u>be specified, by type of abortion procedure and duration of gestation, during which</u> ~~that~~ a patient <u>must remain</u> ~~remains~~ in the recovery room ~~by type of abortion procedure and duration of gestation~~.

<u>8.</u>~~9.~~ The physician <u>ensure</u> ~~ensures~~ that<u>, with the patient's consent,</u> a registered nurse, licensed practical nurse, advanced registered nurse practitioner, or physician assistant from the abortion clinic makes a good faith effort to contact the patient by telephone<u>,</u> ~~with the patient's consent,~~ within 24 hours after surgery to assess the patient's recovery.

5

9.10.  Equipment and services be are readily accessible to provide appropriate emergency resuscitative and life support procedures pending the transfer of the patient or viable fetus to the hospital.

(7)  If an any owner, operator, or employee of an abortion clinic fails to dispose of fetal remains and tissue in a sanitary manner pursuant to s. 381.0098, rules adopted thereunder, and rules adopted by the agency pursuant to this section consistent with the disposal of other human tissue in a competent professional manner, the license of such clinic may be suspended or revoked, and such person commits is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

(8)  Beginning February 1, 2017, and annually thereafter, the agency shall submit a report to the President of the Senate and the Speaker of the House of Representatives which summarizes all regulatory actions taken during the prior year by the agency under this chapter.

Section 5.  Subsection (3) of section 390.014, Florida Statutes, is amended to read:

390.014  Licenses; fees.—

(3)  In accordance with s. 408.805, an applicant or licensee shall pay a fee for each license application submitted under this chapter and part II of chapter 408. The amount of the fee shall be established by rule and may not be more than required to pay for the costs incurred by the agency in administering this chapter less than $70 or more than $500.

Section 6.  Effective January 1, 2017, present subsection (3) of section 390.025, Florida Statutes, is amended, and new subsections (3), (4), and (5) are added to that section, to read:

390.025  Abortion referral or counseling agencies; penalties.—

(3)  An abortion referral or counseling agency, as defined in subsection (1), shall register with the Agency for Health Care Administration. To register or renew a registration an applicant must pay an initial or renewal registration fee established by rule, which must not exceed the costs incurred by the agency in administering this section. Registrants must include in any advertising materials the registration number issued by the agency and must renew their registration biennially.

(4)  The following are exempt from the requirement to register pursuant to subsection (3):

(a)  Facilities licensed pursuant to this chapter, chapter 395, chapter 400, or chapter 408;

(b)  Facilities that are exempt from licensure as a clinic under s. 400.9905(4) and that refer five or fewer patients for abortions per month; and

6

CODING: Words stricken are deletions; words underlined are additions.

(c)   Health care practitioners, as defined in s. 456.001, who, in the course of their practice outside of a facility licensed pursuant to this chapter, chapter 395, chapter 400, or chapter 408, refer five or fewer patients for abortions each month.

(5)   The agency shall adopt rules to administer this section and part II of chapter 408.

(6)(3)   Any person who violates the provisions of subsection (2) commits this section is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083. In addition to any other penalties imposed pursuant to this chapter, the Agency for Health Care Administration may assess costs related to an investigation of violations of this section which results in a successful prosecution. Such costs may not include attorney fees.

Section 7.   Section 873.05, Florida Statutes, is amended to read:

873.05   Advertising, purchase, or sale, or transfer of human embryos or fetal remains prohibited.—

(1)   A No person may not shall knowingly advertise or offer to purchase or sell, or purchase, sell, or otherwise transfer, a any human embryo for valuable consideration.

(2)   As used in this subsection section, the term "valuable consideration" does not include the reasonable costs associated with the removal, storage, and transportation of a human embryo.

(2)   A person may not advertise or offer to purchase, sell, donate, or transfer, or purchase, sell, donate, or transfer, fetal remains obtained from an abortion, as defined in s. 390.011. This subsection does not prohibit the transportation or transfer of fetal remains for disposal pursuant to s. 381.0098 or rules adopted thereunder.

(3)   A person who violates the provisions of this section commits is guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Section 8.   For the 2016-2017 fiscal year, 0.5 full-time equivalent positions, with associated salary rate of 39,230, are authorized and the sums of $59,951 in recurring funds and $185,213 in nonrecurring funds from the Health Care Trust Fund are appropriated to the Agency for Health Care Administration for the purpose of implementing this act.

Section 9.   Except as otherwise expressly provided in this act, this act shall take effect July 1, 2016.

Approved by the Governor March 25, 2016.

Filed in Office Secretary of State March 25, 2016.

CODING: Words stricken are deletions; words underlined are additions.